## STATE EX REL. CLIFFORD L. HILTON v. PROBATE COURT OF COUNTY OF FREEBORN AND ANOTHER.[1]

### April 25, 1919.

### No. 21,255.

**Insane — construction of 1917 act.**

1. Chapter 409, Laws of Minnesota for 1917, does not give the state a right to take a distributive share in the estate of a deceased person who was an inmate of and maintained at the expense of the state at one of its hospitals for the insane. As to the class of persons referred to in the act and their estates, the rights of the state are those of a creditor only.

**Same — support of inmates of state hospitals.**

2. Upon a review and consideration of the statutes of this state relating to the payment of the expense of maintaining inmates of state hospitals for the insane, it is *held*, that prior to the legislation enacted in 1917 the state was required to support such inmates at its own expense.

**Same — 1917 act not retrospective.**

3. Chapter 409, Laws of Minnesota for 1917, is not to be given a retrospective effect.

**Appeal and error — review of decision of probate court by appeal and not by writ.**

4. Review of an order of the probate court on a claim based on the statute referred to should be had by appeal to the district court. No future application to this court for a writ of certiorari to review such an order will be granted.

Upon the relation of Clifford L. Hilton, as attorney general, the supreme court granted its writ of certiorari directed to the probate court for Freeborn county and the Honorable A. U. Mayland, judge thereof,

[1]Reported in 171 N. W. 928.

to review the action of that court disallowing all but $23 of a claim of the state against the estate of Rome A. Cross, deceased. Affirmed.

*Clifford L. Hilton,* Attorney General, and *Egbert S. Oakley,* Assistant Attorney General, for relator.

*Heman Blackmer* and *H. H. Dunn,* for respondents.

LEES, C.

Certiorari to review an order of the probate court of Freeborn county, disallowing a claim filed by the state of Minnesota against the estate of Rome A. Cross, deceased.

The return shows that on May 30, 1886, Cross was duly committed to the state hospital for the insane at Rochester and remained there continuously up to the time of his death on September 24, 1917, except for a short interval between July 20, 1893, and October 4, 1893. He died intestate, leaving an estate of $9,905. He left no surviving spouse, children, grandchildren or parents.

Administration of his estate was had in the probate court of Freeborn county. At the proper time and in the form prescribed by law, the state presented to that court, for allowance, a claim of $3,702.65 for treatment and support furnished Cross while an inmate of the hospital. The charge made was at the rate of $120 per year, and at the same rate for the fractional years, or a total of $3,732.65 with a credit of $30 paid August 16, 1917, by Cross' guardian. The court allowed $22 on the claim, with interest from September 24, 1917, and disallowed the remainder of $3,680.65. The state took no appeal from the order of disallowance, but sued out this writ. The case presented involves construction and application of chapter 409, p. 620, Laws of 1917, which reads as follows:

An act giving the state of Minnesota a claim in certain cases against the estate of insane persons who died while within a state institution. Be it enacted, etc.:

Section 1. Whenever any patient in a state institution for the insane dies and does not leave surviving him spouse, children, grandchildren or parents, then and in such case the state shall have a claim for maintenance, treatment and support against the estate of such deceased person, which claim shall be computed at the rate of one hun-

dred twenty dollars per year for the time such person was in such institution and be verified by the superintendent of the institution, wherein such deceased person was confined. Provided, however, that the estate of such deceased insane person shall be entitled to a credit upon such claim of any sum or sums of money that may have been paid to the state for his or her maintenance, treatment or support in such institution.

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*

Approved April 20, 1917.

Among the questions argued were these:

Is the statute to be construed as giving the state a right to take a distributive share in the estate of insane persons of the class described in the act, or is it to be construed to give merely a right to reimbursement for expenses incurred in maintaining such persons, and, if the latter construction is adopted, should the statute be given a retrospective effect?

1. We are of the opinion that the statute should not be construed to give the state a distributive interest or share in the estates of persons to whom it applies. Its language clearly points to the conclusion that the legislature intended that the state should have a claim against the estates of such persons and nothing more. Especially significant is the provision for a credit upon the claim of any sum of money which may have been paid for the support of such patient. This conclusion is borne out by chapter 294, p. 429, Laws of 1917. Section 4 of that act provides that, for the purpose of defraying the expenses of the maintenance of any inmate of a state hospital for the insane, the state shall have a valid claim for reimbursement to the extent of $10 per month—first, against the property or estate of such inmate, and second, against his spouse, children or parents, unless the state board of control finds that the property of such inmate is not sufficient to more than care for and maintain his wife and minor children, in which case his property shall be relieved from liability.

Section 6 provides for the collection of any sums which may be due to the estate under the provisions of section 4, by action against the representative of the inmate. The two acts relate to the same subject mat-

ter, and taken together indicate the legislative intent to have been as above stated.

2. Whether, in the absence of a statute, the estate of an insane person is chargeable with his maintenance at a public institution, is a question upon which there is a diversity of judicial opinion. The cases on both sides of the question are collected in Kaiser v. State, 80 Kan. 364, 102 Pac. 454, 24 L.R.A. (N.S.) 295. An interesting note on the subject is found in 1 Minn. Law Rev. 91. However, we are not greatly concerned with the rule applicable in the absence of a statute, in view of the history of the legislation of the past 45 years upon the subject under consideration.

By section 1, chapter 19, p. 134, Laws of 1874, it was provided that every insane person, who is a bona fide resident of the state and who is admitted to a state hospital for the insane, shall be maintained at the public expense free of charge to his relatives or friends. This statute continued in effect until chapter 5, p. 78, Laws of 1893, was enacted, which retained substantially the same provision, and further provided for clothing insane patients at the expense of the state. See sections 3461, 3493, G. S. 1894. No change was made in the law until the revision of 1905, which retained section 3493 but not section 3461. See section 1925, R. L. 1905. By chapter 338, p. 461, Laws of 1907, provision was made for the special care of dangerous insane persons, and in section 3 thereof these words occur: "While he is at said asylum, he shall be clothed and supported as are other insane patients." There appears to have been no further legislation on the subject until 1917.

From a consideration of these statutes, we conclude that up to the year 1917 the state was charged with the expense of supporting all inmates of its hospital for the insane. No agreement on the part of a patient or his relatives to reimburse it can be implied in view of the fact that the state itself was under the duty imposed by statute of bearing such expense. It having been the policy of the legislature to put the burden on the state, it is inconceivable that, after pursuing this policy for over 40 years, it intended, at its session in 1917, to pass a statute having a retrospective effect, and by virtue thereof, attempt to obtain reimbursement for expenditures made with no expectation of compensation, but rather in compliance with a statutory duty imposed. It is only

reasonable to attribute to the legislature an intent to create an obligation from and after the date of the passage of the two acts of 1917 already referred to.

This case falls within the rule that a statute should never be allowed a retroactive operation not required by express command or unavoidable implication. Wilson v. Red Wing School District, 22 Minn. 488; Gaston v. Merriam, 33 Minn. 271, 22 N. W. 614; Brown v. Hughes, 89 Minn. 150, 94 N. W. 438; and see City of Rutland v. Town of Chittenden, 74 Vt. 219, 52 Atl. 426.

Sorenson v. Rasmussen, 114 Minn. 324, 131 N. W. 325, 35 L.R.A. (N.S.) 216, cited and relied on by the state, is not controlling. That case dealt with a statute relating to the right of inheritance, which was held to be a right not accruing until the death of the owner of the estate, and hence the statute was held to be prospective. We perceive no analogy between a statute of that sort and one such as is now before us, which relates to the right of the state to obtain compensation for support furnished in the past to insane patients when the state was bound to support them at its own expense, or at least had no statutory right to compensation for such support.

We hold that the act under consideration should not be given a retrospective effect and that the state has no claim against estates of deceased inmates of its hospitals for the insane for their support, prior to the date of the enactment of the statute.

3. In passing, we take occasion to say that in the future no application for a writ of certiorari to review the order of the probate court upon a claim arising under this statute will be granted. Review of orders on claims should be had by appeal from the probate to the district court, and, in view of our holding in this case, claims made by virtue of chapter 409, p. 620, Laws 1917, fall within the provisions of G. S. 1913, § 7490, subd. 4.

Order affirmed.