## IN RE ESTATE OF JENNIE MURPHY v. STATE DEPARTMENT OF PUBLIC WELFARE.

198 N. W. 2d 570.

June 9, 1972—No. 42736.

*Kelly & Finley,* for appellant.

*Warren Spannaus,* Attorney General, *John M. Mason,* Solicitor General, and *Judy L. Oakes,* Assistant Attorney General, for respondent.

*Harry H. Peterson,* for Samuel Smilow, administrator of the estate of Ernest Larson, amicus curiae.

Heard before Knutson, C. J., and Murphy, Rogosheske, and Peterson, JJ.

ROGOSHESKE, JUSTICE.

This is an appeal by the executor of the estate of Jennie Murphy, decedent, from a judgment of the district court determining that the Department of Public Welfare was entitled to recover $8,753.52 from decedent's estate, pursuant to Minn. St. 1967, § 246.53, for the cost of hospital care rendered to her while she was a patient at the Hastings State Hospital for the mentally ill from September 19, 1957, to July 13, 1966.

We affirm the order of the district court except to exclude recovery by the state for the period from September 19, 1957, to April 24, 1959, on the ground that although § 246.53 (L. 1959, c. 578, § 4) created a new cause of action for recovery of the cost of such care upon the death of the patient, it was not intended at the time of its enactment that § 246.53 be applied retroactively.

Decedent was committed as mentally ill to the Hastings State Hospital on September 19, 1957. Except for three relatively brief intermittent periods, she remained hospitalized until July 13, 1966. Shortly after her commitment, she was represented by duly

appointed successive guardians of her person and estate. The average per capita cost of her hospital care for the period of her commitment totaled $16,771.07. The state commenced monthly billing· of decedent's guardians for these costs from July 1, 1961, upon "determination orders" made pursuant to Minn. St. 1967, § 246.51, and issued by the commissioner of public welfare. The last bill received was dated December 31, 1968. In response to these statements, the decedent's successive guardians made periodic payments between 1961 and 1968 totaling $8,017.55. The decedent died on July 7, 1968. On January 31, 1969, the state filed its claim in probate court for $9,213.52 representing unpaid hospital costs which had accrued between 1957 and 1966. The claim was allowed in the amended amount of $8,753.52 by the probate court, and upon appeal this allowance was upheld by the district court after a trial de novo.[1]

As enacted in 1959, Minn. St. 1967, §§ 246.52 and 246.53, read (L. 1959, c. 578, §§ 3, 4):

"Sec. 3. [246.52] The commissioner shall issue an order to the patient or the guardian of his estate, if there be one, and relatives determined able to pay requiring them to pay monthly to the State of Minnesota the amounts so determined the total of which shall not exceed the full cost of care. Such order shall specifically state the commissioner's determination [and] shall be conclusive unless appealed from as herein provided. When a patient or relative fails to pay the amount due hereunder the attorney general, upon request of the commissioner, may institute, or direct the appropriate county attorney to institute, civil action to recover such amount.

"Sec. 4. [246.53] Upon the death of a patient, or a former patient, the total cost of care given him, less the amount actually paid toward the cost of such care by the patient and his relatives, shall be filed by the commissioner as a claim against the estate

---

[1] Minn. St. 525.71(5) authorizes such an appeal from probate court to district court.

of such patient with the court having jurisdiction to probate the estate and all proceeds collected by the state in such case shall be divided between the state and county in proportion to the cost of care each has borne. If the commissioner of public welfare shall determine that the property or estate of any such patient is not sufficient to more than care for and maintain the wife and minor or dependent children of such deceased patient, he shall have the power to compromise the claim of the state in such manner as he, in his judgment and upon investigation, may deem just and proper." [2]

The executor admits decedent's estate is liable under § 246.53 for the balance of unpaid hospital care costs for the July 1, 1961, to July 13, 1966, period for which monthly bills were submitted to the successive guardians. He contends, however, that the 6-year statute of limitations provided by Minn. St. 541.05 bars the state from collecting the cost of care prior to July 1, 1961.[3] As we understand, he argues that §§ 246.52 and 246.53 as enacted

---

[2] In 1969, Minn. St. 1967, § 246.53, was amended to add the following (L. 1969, c. 205, § 2): "Any statute of limitations which limits the commissioner in recovering the cost of care obligation incurred by a patient or former patient shall not apply to any claim against an estate made hereunder to recover cost of care." This addition was not approved until April 28, 1969, and therefore the amended language does not govern the issue presented here. Whether this amendment was intended to remove the statutory bar of Minn. St. 541.05 in cases where the state's probate claim is filed more than 6 years after a patient's death, or was intended merely as an expression of legislative intent that after the effective date of this amendment § 246.53 should be applied retrospectively, or both, we do not decide.

[3] Minn. St. 541.05 provides in part: "* * * [T]he following actions shall be commenced within six years:

* * * * *

"(2) Upon a liability created by statute, other than those arising upon a penalty or forfeiture * * *."

Section 541.01 provides in part: "Such limitation shall apply to actions by or in behalf of the state and the several political subdivisions thereof * * *."

in 1959 established a statutory plan which requires the state to make monthly determination orders to toll the statute of limitations for any charges subsequently sought in a claim against the estate of the deceased patient for the cost of care rendered more than 6 years prior to her death. The state's position is that its claim for the unpaid cost of care rendered more than 6 years prior to the death of the decedent is not barred by the statute of limitations because § 246.53 created a new cause of action in the state which accrues upon the death of decedent. A careful reading of § 246.53 and L. 1959, c. 578, of which it is a part, considered in the light of the legislative history of prior statutes providing for the recovery of state hospital care and the underlying policies prompting the enactment of the 1959 statutory scheme, compels us to agree with the state, except to limit recovery to the balance of the total cost of defendant's care incurred after April 24, 1959, when § 246.53, as a part of L. 1959, c. 578, became effective.

In Minnesota there is not now, nor has there been, any recognized common-law right of the state to collect the cost of hospital care for the mentally ill from a patient, his spouse, or relatives during his lifetime or from his estate after death. See, State ex rel. Hilton v. Probate Court, 142 Minn. 283, 171 N. W. 928 (1919). In 1917, the Minnesota Legislature first formulated a statutory scheme whereby the state could seek reimbursement for such care. L. 1917, c. 294, and primarily § 4 thereof, provided for state reimbursement to the extent of $10 a month from the exempt property or estate of the patient during his lifetime and secondarily from the patient's spouse, children, and parents.[4]

---

[4] L. 1917, c. 294, § 4, provided: "For the purpose of defraying the expenses and cost of maintenance of any inmate in a state asylum, detention hospital or hospital for the insane, the state of Minnesota shall have a valid claim for reimbursement to the extent of $10.00 per month for each such inmate, for all moneys paid and expenses incurred by the state for such maintenance,—first, against the property or estate of such person so maintained, second, against the relatives of such person in the following order, to-wit: spouse, children and parents provided,

In a separate enactment, the legislature, again for the first time in the state's history, also permitted the state to file a claim against the estate upon the death of the patient who leaves no surviving spouse, children, grandchildren, or parents. The claim was limited to $10 a month for the time the patient received care in a state mental hospital. L. 1917, c. 409.[5] In 1929, the attorney

that if the state board of control shall determine that the property or estate of any such insane person is not sufficient to more than care for and maintain the wife and minor children of such inmate, or that the means and property of the classes of persons herein secondly charged with the liability and cost of the maintenance of such insane person in said institutions, is not more than sufficient to properly provide for themselves and those otherwise dependent upon them, the said board of control shall relieve the estate of such insane person and the relatives of such insane person from a portion or all of such charge or liability as they in their judgment and upon investigation may deem just and proper. In case of increase or decrease in the estate of such insane person, or in the estates of those persons herein secondarily liable for the cost of the maintenance of an insane person in such institutions, or in case of the death of such persons, or either of them, the board of control is hereby authorized to modify or cancel its previous order made in relation thereto, and from time to time make such other and further order with reference thereto as it may seem just and proper.

"In all cases under the provision of this act, the property which under the laws of this state, is exempt from attachment, or sale on any final process, issued from any court, shall be exempt also as to the estates and persons charged with or upon whom any liability is imposed under the provisions of this act."

[5] L. 1917, c. 409, § 1, provided: "Whenever any patient in a state institution for the insane dies and does not leave surviving him spouse, children, grandchildren or parents, then and in such case the state shall have a claim for maintenance, treatment and support against the estate of such deceased person, which claim shall be computed at the rate of one hundred twenty dollars per year for the time such person was in such institution and be verified by the superintendent of the institution wherein such deceased person was confined. Provided, however, that the estate of such deceased insane person shall be entitled to a credit upon such claim of any sum or sums of money that may have been paid to the state for his or her maintenance, treatment or support in such institution."

general ruled that L. 1917, c. 294, gave the state a cause of action accruing as the maintenance and care was rendered. Further, he ruled that since the statute of limitations applied to monthly claims under c. 294 and because cc. 294 and 409 provided identical relief, the two chapters were to be construed together, thus barring any probate claim filed pursuant to c. 409 which was over 6 years old. Opinion Attorney General, No. 248-A-1, Nov. 18, 1929. Essentially, it is the executor's argument in this case that Minn. St. 1967, §§ 246.52 and 246.53, are statutory descendants of L. 1917, cc. 294 and 409, and therefore the attorney general's rationale in 1929 is persuasive authority for what the legislature has always intended by these statutory provisions since their initial enactment in 1917. We cannot agree.

In 1931, c. 294, § 4, was amended and the scope of recovery against the patient's property or estate while he was an inmate was expanded from $10 per month to recovery for the per capita cost of the patient's care if he had no dependents.[6] The sole purpose of this amendment was to increase potential reimbursement to the state when the patient's property or estate was not required to support a family while he was hospitalized. Chapters 294 and 409 coexisted until 1943, when Mason St. 1927, § 8833, a continuation of c. 409, § 1, was repealed by L. 1943, c. 636. Thus, from 1943 until 1959, the state had no explicit statutory claim against the estate of a former patient upon death.[7]

---

[6] L. 1931, c. 301 (amending Mason St. 1927, § 8976, which was L. 1917, c. 294, § 4) added this language: "Provided, if an inmate has no dependents the Board of Control may fix a charge in excess of $10.00 per month but not to exceed the per capita cost for the previous fiscal year of the institution of which *he is an inmate* and the state shall have a valid claim against the property or estate of such inmate for the amount so fixed." (Italics supplied.)

[7] In a 1943 bulletin to the Department of Public Welfare, the director listed all statutory changes enacted in the Minnesota Legislature in 1943 which affected the department, but failed to note the repeal of c. 409, § 1, by L. 1943, c. 636. Report on New Legislation, May 3, 1943, in Vol. II, Interdepartmental Memoranda, on file at State Welfare Depart-

L. 1917, c. 294, as amended, was coded as part of the general Probate Code provisions in Minn. St. 1945, c. 526, § 4 of c. 294 becoming Minn. St. 1945, § 526.01,[8] and § 6 of c. 294, which al-

ment library, Centennial Building, St. Paul. The records of the State Welfare Department reveal evidence of at least one claim made against an estate of a deceased patient after the 1943 repeal of c. 409 and before 1959. And as late as 1952, the Division of Public Institutions felt that estates of deceased persons could be charged with "part of the costs of care in a state mental hospital." At that time the statute of limitations was deemed to limit such recoveries "to a period of six years, and at the rate of $10 per month the total amount recoverable [was] $720. It [was] reported that the per capita cost is not retroactive." Minnesota Legislative Research Committee, Relative Responsibility for Costs of Care in State Institutions, Publication No. 44, May 1952, p. 9, see, also, pp. 15, 16. This administrative history suggests that throughout the years c. 409, as interpreted by this court in State ex rel. Hilton v. Probate Court, 142 Minn. 283, 171 N. W. 928 (1919) and by the attorney general in conjunction with c. 294 in 1929 (Opinion Attorney General, No. 248-A-1, Nov. 18, 1929), has been regarded as the sole statutory foundation for claims against a deceased patient's estate. From 1943 until 1959 there was no apparent recognition that c. 409 had been repealed, and neither party to this appeal has noted that fact. The administrative course of conduct of the Department of Public Welfare over these years until April 24, 1959, can only be justified, then, on statutory interpretation of c. 294, § 4, as amended in 1931 and coded in 1945 as § 526.01. While there was some language in c. 294 alone as amended that might suggest the state had a claim against the estate of a deceased patient and even though a longstanding administrative interpretation of a statute is entitled to significant consideration by this court, we cannot adhere to that interpretation if it extends or modifies the statute and conflicts with the intent of the legislature. See, Mankato Citizens Tel. Co. v. Commr. of Taxation, 275 Minn. 107, 145 N. W. 2d 313 (1966). We can find little in L. 1917, c. 294, as amended, which permits this construction after the repeal of L. 1917, c. 409, § 1, in 1943, since it appears clearly that the intent of c. 294 was to promote the recovery of the cost of care while the patient was alive and an inmate of the state hospital.

   [8] Mason St. 1927, § 8976 (L. 1917, c. 294, § 4, as amended), was amended in a minor way in 1941, L. 1941, c. 313, and was unofficially numbered Minn. St. 526.01 in 1941.

lowed the state to sue the patient's estate or relatives from whom the director of public institutions had demanded payment, becoming § 526.03. These provisions were in effect when the decedent, Jennie Murphy, entered the hospital in 1957, and as the statutory predecessors indicated, § 526.01 and § 526.03 were intended to promote and afford state recovery of hospital costs during the life of the patient.

In 1959 with the enactment of §§ 246.50 to 246.55 and the repeal of §§ 526.01 to 526.07, the legislature established a new and more precise statutory mechanism through which reimbursement for the total cost of care can be recovered.[9] Certainly the new statutory scheme goes beyond being a mere reenactment of § 526.01. Under §§ 246.52 and 246.53, the state now has two distinct causes of action. Section 246.52 gives the commissioner of public welfare the right to request the attorney general to bring suit for monthly charges during the lifetime of the mentally ill patient provided that the commissioner had made determination orders for monthly payment. This provision does closely resemble §§ 526.01 and 526.03, continuations of L. 1917, c. 294, §§ 4, 6. Section 246.53, on the other hand, provides that the state shall file a claim in probate court against a former patient's estate for the total cost of care, cost of care being defined as "the average per capita cost of all maintenance, treatment and expense"[10] as determined by the commissioner, and gives the commissioner the power to compromise the claim when the condition of the

---

[9] Minn. St. 246.50 defines pertinent terms for the purposes of §§ 246.51 to 246.55. Section 246.51 requires the commissioner of public welfare to investigate and determine what part of the cost of care the patient is able to pay during his lifetime. If the commissioner determines that the patient is unable to pay the entire cost of care, he may make a determination as to the ability of responsible relatives to pay up to 10 percent of the cost of care. Section 246.54 relates to the liability of the county of the patient's settlement for poor relief purposes for reimbursement, and § 246.55 provides for an appeal from a determination order of the commissioner.

[10] § 246.50, subd. 5.

deceased patient's family warrants it. There was no similar provision in § 526.01. Surely, by its plain language § 246.53 provides for a claim for the total cost of care separate and independent from the claims provided for by § 246.52, and the claim permitted by § 246.53 does not depend upon whether determination orders for monthly payments had been issued while the patient was an inmate, as do claims under § 246.52. Thus, §§ 246.52 and 246.53 establish a decidedly different scheme than the one which the attorney general in 1929 recognized as being based on the interdependence of L. 1917, cc. 294 and 409, to obtain the maximum $10 a month reimbursement from the patient, his family, and relatives, or from the estate if the patient died with no dependents. While the laws from 1943 to 1959 favored seeking reimbursement during the life of the patient, the composite underlying policy of §§ 246.52 and 246.53 is to maximize recoveries for the total cost of care provided a mentally ill patient while still enabling him to retain assets during his lifetime with which to provide comforts for himself in the institution and to prospectively enable him to be self-sustaining in the event he is discharged prior to death. Section 246.52 does not contemplate that in every instance the total cost of care be paid during the patient's lifetime. If the patient were an inmate for more than 6 years and if the statute of limitations applied to § 246.53, the state and the patient would be subjected to needless and upsetting suits to assure reimbursement of charges more than 6 years old. This would not only frustrate the legislative intent underlying §§ 246.52 and 246.53 but also defeat the reasonable administrative convenience embodied in the two sections.

Since § 246.53 provides a cause of action accruing on the death of the patient, the statute of limitations does not begin to run until the claim accrues. However, since there is no clear or manifest indication that § 246.53 was intended by the legislature to be applied retroactively, we must limit the state's probate claim to the per capita cost incurred after April 24, 1959. Minn. St. 645.21. See, State ex rel. Hilton v. Probate Court, *supra;* Smead,

*The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence,* 20 Minn. L. Rev. 775. Furthermore, in light of the discussion above, we do not believe, as the state suggests, that Minn. St. 1967, §§ 246.52 and 246.53, merely procedurally amend and extend remedial rights which previously existed under § 526.01, thus avoiding application of the rule against retroactivity. Generally, it is immaterial in this state whether a law alters procedural or substantive rights; the legislature still must express its intention to make it retroactive. See, Chapman v. Davis, 233 Minn. 62, 65, 45 N. W. 2d 822, 824 (1951). This is particularly true if any remedial change enlarges the state's scope of recovery. See, 82 C. J. S., Statutes, § 416. Even if § 246.53 could be viewed merely as an amendment to § 526.01 that has been renumbered, we must regard § 246.53 as a new provision in the scheme of reimbursement for state care of the mentally ill because of the legislative history of this subject matter, and "new provisions shall be construed as effective only from the date when the amendment became effective." Minn. St. 645.31, subd. 1.

We are unable to reconcile the figures used in the briefs with the trial court's file and therefore remand for determination of the balance of the cost of care owing the state from April 24, 1959, to July 13, 1966.

Affirmed in part, reversed in part, and remanded.

MR. JUSTICE TODD and MR. JUSTICE MACLAUGHLIN, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.