**In re ESTATE OF Rose EDHLUND, Decedent.**

**No. C6-89-385.**

Court of Appeals of Minnesota.

Sept. 5, 1989.

John C. Peterson, McLean Peterson Law Firm, Mankato, for appellant, Personal Representative of Estate of Rose Edhlund.

Ross E. Arneson, Blue Earth County Atty., Ronald M. Otten, Sr., Asst. County Atty., Mankato, for respondent, Blue Earth County Human Services Dept.

Hubert H. Humphrey, III, Atty. Gen., Gail M. Olson, Asst. Atty. Gen., St. Paul, for respondent Intervenor, State Atty. Gen.

Heard, considered and decided by KALITOWSKI, P.J., and FOLEY and THOREEN,* JJ.

## OPINION

FOLEY, Judge.

This appeal concerns a challenge by the personal representative of the estate of Rose Edhlund to the application of Minn. Stat. § 256B.15 as amended by 1987 Minn. Laws, ch. 403, art. 2, § 82 effective date August 1, 1987. Appellant contends respondent Blue Earth County Human Services' claim for a medical assistance lien is an impermissible retroactive application of the statute. The trial court ruled that the claim for benefits was not a retroactive application of the statute and that the plain language of the statute required that the claim be allowed. We reverse and remand.

## FACTS

Rose Edhlund died on May 11, 1988. An application for informal appointment of administrator was filed with the trial court and approved on July 1, 1988.

On August 2, 1988, respondent filed a medical assistance claim. Appellant filed a notice of disallowance of claim insofar as the claim was for services rendered to Ar-

* Acting as judge of the Court of Appeals by ap-    pointment pursuant to Minn. Const. art. 6, § 2.

thur Edhlund, the previously deceased spouse of Rose. A petition for allowance of claim was filed on September 1, 1988, by respondent.

The parties stipulated to the following facts:

1. Rose and Arthur Edhlund made joint application for medical assistance on April 29, 1982.

2. Rose received medical assistance from May 1, 1982 to June 1, 1986 in the amount of $1,488.11.

3. Arthur received medical assistance from May 1, 1982 until his death on May 13, 1986, in the amount of $64,741.31.

4. Arthur left no estate, as all property was held in joint tenancy with Rose.

5. At the time of Arthur's death, the law in effect governing recovery was *In re Estate of Messerschmidt*, 352 N.W.2d 774 (Minn.Ct.App.1984).

6. Rose neither applied for nor received medical assistance benefits after June 1, 1986.

7. Chapter 403, Art. 2, sec. 82, Laws of 1987, which amended Minnesota Statutes 256B.15 to allow a claim against the estate of a surviving spouse, was effective August 1, 1987.

8. Rose died on May 11, 1988.

## ISSUES

Did the trial court err in finding that the recent amendment to Minn.Stat. § 256B.15 was not a retroactive application of law as applied to appellant's claim?

## ANALYSIS

The statute in question is Minn.Stat. § 256B.15 (Supp.1987). Prior to August 1, 1987, the statute allowed a claim against the estate of a person who had received medical assistance at the death of the person, if single. However, if there was a surviving spouse, the claim could not be made against the estate of the recipient spouse. *See* Minn.Stat. § 256B.15 (1986).

In 1987, section 256B.15 itself was amended to allow claims against the estate of a person for medical assistance benefits received by that person or the person's predeceased spouse. 1987 Minn.Laws, ch. 403, art. 2, § 82. Appellant argues that the application of this amendment is a retroactive application because respondent's claim was extinguished on Arthur's death in May of 1986, one year prior to the new amendment.

Minnesota law is clear on the retroactivity of legislation. In this state, no statute shall be construed to be applied retroactively unless "clearly and manifestly so intended by the legislature." Minn.Stat. § 645.21 (1986). In following that legislative mandate, the supreme court has held that before a statute will be afforded retroactive application, there must exist clear evidence that the legislature intended retroactive application "such as mention of the word 'retroactive.'" *Duluth Firemen's Relief Association v. City of Duluth*, 361 N.W.2d 381, 385 (Minn.1985). In attempting to ascertain whether the legislature intended that a statute be retroactively applied, the supreme court has stated that

> it is immaterial in this state whether a law alters procedural or substantive rights; the legislature still must express its intention to make it [the statute in question] retroactive.

*Estate of Murphy v. State*, 293 Minn. 298, 308, 198 N.W.2d 570, 576 (1972). *See also Cooper v. Watson*, 290 Minn. 362, 369, 187 N.W.2d 689, 693 (1971); *Chapman v. Davis*, 233 Minn. 62, 65, 45 N.W.2d 822, 824 (1951).

A claim similar to the claim being made here by respondent was made in *Messerschmidt*. There, the deceased parties received medical assistance benefits from Kandiyohi County. Hazel Messerschmidt died in July 1982, leaving no estate. At the time of her death, both she and her husband were joint tenants to real property in LeSueur County. By operation of law, upon Hazel's death her share of the property automatically passed to her surviving husband, Wesley. Wesley died several months later. LeSueur County filed a claim against the estate of Wesley for repayment of medical assistance received on

behalf of himself and also by Hazel. The probate court allowed the claims against the estate of Wesley for medical assistance, but disallowed all other claims.

This court determined that the statute in effect at the time failed to specifically allow recovery against the estate of the surviving spouse. *Messerschmidt,* 352 N.W.2d at 777. More importantly, this court stated that "medical assistance is a creature of legislation and recovery of payments from an estate must depend upon *express statutory authority.*" *Id.* at 778 (emphasis added).

In the present case, Arthur died in 1986, leaving no estate. At the time of his death, the law in effect was as interpreted in *Messerschmidt.* Under that case, the ability to recover ended with his death. In addition, there remains a question on what, if any, property is available for respondent to attach. Here, Arthur's property rights vested in Rose (the surviving joint tenant) upon Arthur's death, one year before the amendment to the statute.

Respondent argues that this court's decision in *In re Estate of O'Keefe,* 354 N.W.2d 531 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Jan. 4, 1985), is controlling. In *O'Keefe,* this court affirmed an order allowing a claim by Hennepin County against the estate of O'Keefe for the value of medical assistance benefits paid to her and to be assessed against the decedent's homestead. In 1982, Minn.Stat. § 525.145(3) was amended to remove the homestead exemption, thus allowing counties to file medical assistance estate claims under Minn.Stat. § 256B.15 against homesteads as well as other assets of an estate. Marie O'Keefe began receiving medical assistance in 1979 and continued receiving it until her death in 1983, one year after the homestead exemption was removed. This court rejected the estate's argument that subjecting O'Keefe's homestead to an estate claim would be a retroactive application of the law. This court stated:

At the time of Marie O'Keefe's death on April 1, 1983, Hennepin County's claim arose under § 256B.15. At the time of her death § 525.145(3), as amended, was in effect and had been since April 1, 1982. That amendment increased the pool of assets from which medical assistance could be recovered to include the homestead from and after April 1, 1982. There was nothing retroactive either in the claim or in the availability of the homestead asset.

*Id.* at 534. Respondent's reliance on *O'Keefe* certainly would be determinative if the personal representative was attempting to deny a claim for assistance furnished to Rose Edhlund, but that is not the case.

*O'Keefe* makes clear that the determinative date for application of the retroactive standard is the date of death of the recipient of the aid. In this case, the recipient Arthur died prior to the passage of the amendment. No recovery could be made because at his death he left no estate. At his death, the state lost all right to recover for aid paid to him. Unlike the estate of *O'Keefe,* no potential claim existed against anyone after Arthur's death. Had a statute allowing claims against the estate of a spouse been passed before his death, the state would have had a right to recovery from the spousal estate. There was no such law and the ability to collect for medical assistance paid to Arthur ceased at his death.

*O'Keefe* is also distinguishable from the situation here in that medical assistance continued after the passage of the change in the homestead exemption provisions, giving rise to an argument that O'Keefe accepted the new homestead provisions in order to continue the medical assistance. Here, no application for medical aid was made after Arthur's death in 1986. Rose took possession of her survivorship property without any duty to pay the medical assistance of the deceased spouse. She did not seek any further assistance for herself. At the time of the passage of the 1987 amendment, she had no duty to pay from her estate any debt other than her own and the medical assistance recovery for herself.

Respondent intervenor State Attorney General argues that this court should consider the public interest rights of the taxpayer in regard to the amount of state

money spent on welfare assistance. There is no question that this should be a concern. However, regardless of how harsh our result might seem, it is important to keep in perspective that this amendment is a creature of the legislature, and to construe the language in such a way to allow a different result from that reached here, would be improper, since such "a change is properly a matter for the legislature." *Molberg v. Marsden*, 294 Minn. 493, 495, 200 N.W.2d 298, 300 (1972). It is not our practice to contradict by judicial construction the plain meaning of the statute.

Finally, appellant argues that the trial court's retroactive application of the amendment is unconstitutional due to the fact that it impairs contractual obligations and takes property without due process. Because we find that the trial court improperly applied the amendment, we need not address this issue.

## DECISION

Our examination of the 1987 amendment and its legislative history fails to indicate any legislative intent to apply the amendment retroactively. Accordingly, the trial court's application of the amendment was error.

Reversed and remanded.

KALITOWSKI, Judge, dissenting.

I respectfully dissent. I would affirm the trial court on the basis that the county's claim against the estate of Rose Edhlund is not a retroactive application of law where the statutory amendment allowing the claim was enacted more than nine months prior to Rose Edhlund's death.

Under both the prior version of the statute (as interpreted in *In re Estate of Messerschmidt*, 352 N.W.2d 774 (Minn.Ct.App. 1984)) and under the amended law, the county had no claim for Arthur Edhlund's medical assistance at the time of Arthur's death, where all of Arthur's property was held in joint tenancy with Rose. Thus the event which the legislature affected by amending the law was the distribution of Rose Edhlund's estate. Since Rose's death and the creation of her estate occurred subsequent to the change in the law there is no retroactive application.

The county concedes that its claim depends on events which occurred prior to the statutory change (i.e. the payment of medical assistance and Arthur's death). However, these events merely define the claim against Rose Edhlund's estate, and "a statute is not retroactive merely because it relates to antecedent facts for its operation." *In re Estate of O'Keefe*, 354 N.W.2d 531, 535 (Minn.Ct.App.1984) (citations omitted), *pet. for rev. denied* (Minn. Jan. 4, 1985).

Additionally, the presumption against retroactive application derives from a presumed unfairness to a person deprived of the ability to alter circumstances and avoid application of a law. In the present case, it can hardly be said the amended law is unfair to Rose where the county's claim for repayment cannot be made until after Rose's death. Also, where the heirs of Rose Edhlund had a mere expectancy rather than a vested right in her estate there is no unfairness. Furthermore, it is highly unlikely that Arthur or Rose had either the inclination or the ability to arrange things differently to avoid having to repay the county for Arthur's medical assistance after Rose's death.

Finally, there are strong policy reasons for allowing medical assistance payments to be recovered from the estates of recipients. Estate collection statutes serve a very important purpose in allowing recovery of money paid to qualified individuals so that other similarly situated persons may be helped. *In Re Estate of Turner*, 391 N.W.2d 767, 770 (Minn.1986).