In re **A PETITION FOR INSTRUCTIONS TO CONSTRUE BASIC RESOLUTION 876 OF The PORT AUTHORITY OF the CITY OF ST. PAUL.**

**Nos. A07–1512, A07–1513, A07–1514.**

Supreme Court of Minnesota.

Sept. 10, 2009.

Rehearing Denied Nov. 6, 2009.

Kay Nord Hunt, Phillip A. Cole, Keith J. Broady, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN, for appellants 876 Bondholders.

Scott G. Knudson, Paul C. Thissen, Diane B. Bratvold, Briggs and Morgan, P.A., Minneapolis, MN, for respondent Port Authority of the City of St. Paul.

Susan L. Naughton, League of Minnesota Cities, St. Paul, MN, for amicus curiae League of Minnesota Cities.

## OPINION

ANDERSON, G. BARRY, Justice.

Under Basic Resolution 876, the Port Authority of the City of St. Paul issued a series of revenue bonds. The Port Au-

thority now believes it will never be able to repay the principal of the bonds, and Basic Resolution 876 contains no provision for this circumstance. In 2002 and 2004 the Port Authority filed petitions for instructions regarding Basic Resolution 876 pursuant to Minn.Stat. § 501B.16 (2008). The Ramsey County District Court granted the petitions, which allowed the Port Authority to, among other things, conduct Dutch auctions and recover administrative fees from the funds pledged to repay the bondholders. In 2006 the Port Authority filed a third petition, this time for permission to liquidate all bonds issued under the Basic Resolution. The appellants in this case, a significant number of objecting bondholders, joined together against the 2006 petition. The district court, finding that it had subject-matter jurisdiction over the petitions, granted the Port Authority's request to begin the liquidation process. The district court also denied the appellants' petition for a receiver and their motions to vacate the 2002 and 2004 orders. The court of appeals affirmed the district court's rulings. On appeal, the appellants claim (1) that the district court had no jurisdiction to alter the terms of the Basic Resolution; (2) that the application of Minn.Stat. ch. 501B (2008) to this case was unconstitutional;. (3) that the court of appeals erred when it affirmed the district court's denial of the motions to vacate; and (4). that the district court erred when it denied the petition for a receiver. We reverse and remand to the district court for further proceedings.

The Port Authority of the City of St. Paul is established under Minn.Stat. § 469.049 (2008) as "a body politic and corporate with the right to sue and be sued in its own name" and as a governmental subdivision. The Port Authority has a duty to "promote the general welfare of the port district." Minn.Stat. § 469.055, subd. 1(1) (2008). In 1971, the legislature also empowered the Port Authority with the powers and duties of redevelopment agencies under Minn.Stat. ch. 474. Act of Nov. 11, 1971, ch. 35, § 9, 1971 Minn. Laws 1st Spec. Sess. 2735, 2738.

On February 14, 1974, the Port Authority adopted Basic Resolution 876. The Basic Resolution authorizes the Port Authority to "issue and sell Revenue Bonds" (876 Bonds) for the purpose of initiating revenue producing projects. Proceeds from the sale of 876 Bonds were deposited in a construction fund, from which borrowers could withdraw money to finance their projects. According to the record, 139 properties were financed by the sale of 876 Bonds, and the last 876 Bond issue occurred in May of 1991.

The Port Authority specifically covenanted to pay the principal and interest on every 876 Bond. The Basic Resolution provides that all bondholders would be repaid out of a Common Revenue Bond Fund (876 Fund).[1] The 876 Fund is subsidized by all available net revenues, which include regular payments by borrowers, revenues from facilities operated by the Port Authority, and earnings on those revenues. The Basic Resolution also provides for reserve funds, in case the 876 Fund is insufficient to pay the interest and principal owed to the bondholders.[2] Many borrowers defaulted on their projects, and the Port Authority was forced to repossess and manage or resell the defaulted properties,

---

1. Revenue bonds are payable only from the revenue pledged to payment under the Basic Resolution, and neither the Port Authority nor the City of St. Paul are liable in the event of a default. *See* Minn.Stat. § 469.162 (2008).

2. These reserve funds, including the Accumulated Net Revenues Fund, the Common Reserve Fund, and the Supplemental Reserve Fund, were all depleted by the end of 2004.

often at a lower value than the original bond amount.

Realizing that the 876 Fund was in dire straits, the Port Authority conducted a Dutch auction tender offer in 1996. Under this auction format, bondholders offered a price at which they would sell their bonds, and the Port Authority purchased the lowest-priced 876 Bonds using prepaid net reserves and special funds. In 2002 the Port Authority petitioned the Ramsey County District Court to allow it to conduct more Dutch auction tender offers. The court granted the petition, and the Port Authority conducted two more tender offers, once in 2002 and once in 2004. In total, the Port Authority retired over $123 million in debt at a cost of $100 million.

In 2004 the Port Authority petitioned the district court again, requesting that the interest and principal payment dates be adjusted so that payments would only have to be made semiannually instead of every month. In addition, the Port Authority asked the district court for authorization to recover ongoing administrative expenses for 876 Bonds from the net revenues. The court granted both requests. In both 2002 and 2004, the court also approved and confirmed the Port Authority's administration of the 876 Fund.

In 2006 the Port Authority once again petitioned the district court. This time, it asked for permission to develop a proposal to liquidate all the remaining 876 Bonds by selling off revenue streams. The Port Authority believed that this drastic move was necessary in order to protect all the bondholders' rights to have the remaining funds "equally and ratably" distributed. Though no bondholders objected in court to the petitions in 2002 and 2004, the bondholder appellants joined together and objected to the 2006 petition. In response to the parties' motions, the district court, among other things, issued an order on May 17, 2007, which (1) ruled that the Port Authority had proper statutory authority under Minn.Stat. ch. 501B to bring its 2002, 2004, and 2006 petitions; (2) denied appellants' motion to vacate the 2002 and 2004 orders; (3) denied appellants' petition for a receiver; and (4) granted the Port Authority's petition for instructions allowing it to begin the liquidation process. The court also confirmed and approved the Port Authority's administration of the 876 Fund through June 30, 2006.

Appellants sought review of the district court's decision. The court of appeals, in an unpublished decision, consolidated the three cases and affirmed the district court, holding that the district court had subject-matter jurisdiction over all the petitions and that the court did not abuse its discretion by denying the appointment of a receiver. *In re a Petition for Instructions to Construe Basic Resolution 876 of the Port Auth. of St. Paul,* Nos. A07–1512, A07–1513, A07–1514, 2008 WL 2168643, at *8 (Minn.App. May 27, 2008). This appeal followed.

I.

▇ The first issue before us is whether Minn.Stat. ch. 501B authorizes the Port Authority to petition a district court for instructions regarding Basic Resolution 876. Determining whether a statute is applicable and the interpretation of that statute are questions of law which we review de novo. *Goldman v. Greenwood,* 748 N.W.2d 279, 282 (Minn.2008). Before analyzing the merits of this issue, we first review the history of the relevant statutory provisions.

A.

1.

In 1933 the legislature passed a law allowing trustees to "petition the court for

instructions in the administration of the trust or for a construction of the trust instrument." Act of Apr. 15, 1933, ch. 259, § 3, 1933 Minn. Laws 329, 329–30 (codified at Minn.Stat. § 501.35 (1976)). In 1977 this section was amended to allow "[a]ny trustee of an express trust by will or other written instrument ... or any beneficiary of that trust" to petition for instructions. Minn.Stat. § 501.35 (1988). The legislature recodified chapter 501 as chapter 501B in 1989. Under the new codification, the petition can include requests for a court "to confirm an action taken by a trustee"; "to construe, interpret, or reform the terms of a trust"; or "to instruct the trustee, beneficiaries, and any other interested parties in any matter relating to the administration of the trust and the discharge of the trustee's duties." Minn. Stat. § 501B.16 (2008). If we determine that this section applies to the 876 Bonds, then the language is undoubtedly broad enough to cover the specific requests raised in the Port Authority's petitions.

A companion section, under both the former chapter 501 and the current chapter 501B, clarifies the applicability of section 501B.16. In 1978 the legislature amended the law so that the procedures in section 501.35 would apply, "unless otherwise provided in the trust instrument, to trusts established in connection with bonds issued pursuant to chapter 474." Minn. Stat. § 501.37 (1988). Upon recodification in 1989, the substance of section 501.37 was transferred to Minn.Stat. § 501B.25 (1992). It restated that section 501B.16 applied to "trusts established in connection with bonds issued under chapter 474" unless otherwise provided. Minn.Stat. § 501B.25. But the recodification of section 501.37 initially failed to account for the 1987 repeal of chapter 474 and recodification as chapter 469. In 1993 the legislature amended section 501B.25 so that it

applied to "trusts established in connection with bonds issued under chapter 469." *Id.*

The 1993 amendment to section 501B.25 contained another change, however, that is the source of the dispute here. The legislature added the following language to specify that the procedures in section 501B.16 also apply,

> *at the sole election of the issuer of bonds issued under chapter 469, without a trust indenture, to the pledges and other bond covenants made by the issuer in one or more resolutions with respect to the bonds.* If the issuer so elects to apply sections 501B.16 to 501B.23, for such purposes only, the pledges and other bond covenants shall be deemed the "trust," the resolution or resolutions shall be deemed the "trust instrument," and the issuer shall be deemed the "trustee" notwithstanding the absence of any fiduciary responsibility owed by the "issuer" toward the bondholders. Nothing in this section shall preclude the issuer from seeking approval under sections 501B.16 to 501B.23 of the creation of any express trust under a trust indenture and the appointment of a trustee thereunder to act as a fiduciary for the benefit of the bondholders.

Minn.Stat. § 501B.25 (2008) (emphasis added). In other words, even if bonds were issued under chapter 469 without a trust indenture, section 501B.16 allows the issuer of those bonds to use the same procedure that permits a trustee of an express trust to petition a court for instructions.

## 2.

Our next step is to determine what statutory authority permitted the issuance of the 876 Bonds. Under the Basic Resolution, the Port Authority "is authorized under the Act to initiate revenue producing projects, issue and sell Revenue Bonds for

that purpose and refund and discharge such Revenue Bonds in the manner and upon the terms set forth in the Act, Basic Resolution No. 876 and any supplemental resolution." The Act was defined in 1974 as "all relevant provisions of Minnesota Statutes, Chapter 458, 474 and 475, and any amendments thereto." In particular, the Port Authority was authorized to issue revenue bonds through resolutions, and "by resolution make an agreement or covenant with the bondholders or their trustee." Minn.Stat. § 458.194, subds. 1, 4 (1986). Similarly, under its powers as a redevelopment agency, the Port Authority could issue revenue bonds and enter into revenue agreements. *See* Minn.Stat. §§ 474.03–.11 (1986).

In 1987 the legislature repealed both chapters 458 and 474, recodifying them as chapter 469. Section 458.194 became Minn.Stat. § 469.061 (2008), and the sections from chapter 474 became Minn.Stat. §§ 469.152–.166 (2008). The 876 Bonds reflected this statutory change, and revenue bonds after 1987 referred to the statutory authority of Minnesota Statutes chapter 469.[3] Because the Basic Resolution defines the Act as chapters 458, 474, and any subsequent amendments, the 876 Bonds were also issued under chapter 469 after the 1987 recodification.

### B.

### 1.

Appellants argue that the 876 Bonds are not within the purview of Minn.Stat. ch. 501B. The Port Authority's first response is that the Basic Resolution is the practical equivalent of a trust indenture, which has been covered by section 501B.25 or its predecessor since 1978. Prior to 1993, however, section 501B.25 stated that petitions for instructions only applied "to trusts established in connection with bonds." Minn.Stat. § 501B.25 (1992). Only after the 1993 amendments did the chapter 501B procedures apply to bonds "without a trust indenture."

Black's Law Dictionary defines "trust indenture" as "[a] document containing the terms and conditions governing a trustee's conduct and the trust beneficiaries' rights." *Black's Law Dictionary* 784–85 (8th ed.2004). For a trust to be created, we have required a clear demonstration by external expression of the intent to create a trust. *See Bond v. Comm'r of Revenue,* 691 N.W.2d 831, 837 (Minn.2005). There is no language in the Basic Resolution establishing a trust or a trustee. In fact, the Basic Resolution makes clear that the Port Authority and the City of St. Paul have limited pecuniary liability. Thus, the Port Authority could not have petitioned a district court for instructions regarding the Basic Resolution prior to the 1993 amendment of section 501B.25 because the Basic Resolution does not establish a trust in connection with the 876 Bonds.

### 2.

The Port Authority's second argument, however, is that the 1993 amendment to Minn.Stat. § 501B.25 (2008) extended the procedures of chapter 501B to the 876 Bonds. Appellants counter that such an extension would constitute an impermissible retroactive application of the new amendment. The Port Authority responds that because it did not file its petitions until 2002, 2004, and 2006, it was merely prospectively applying a procedural

---

**3.** Appellants claim that the 876 Bonds are still authorized by Minn.Stat. ch. 474 because of the saving clause for repealed laws in Minn. Stat. § 645.35 (2008). But the 1987 law is more precisely described as a repeal and re-enactment under Minn.Stat. § 645.37 (2008). Thus, Minn.Stat. chs. 458 and 474 "shall be construed as continued in active operation" under Minn.Stat. ch. 469. Minn.Stat. § 645.37.

remedy to a claim initiated after the effective date of the amendment. On this issue, the district court found that using the amended procedure "does not impair any vested rights pertaining to bonds issued prior to 1993." The court of appeals similarly held that the relevant date to determine retroactivity is not the date on which the 876 Bonds were issued but the date on which the Port Authority petitioned the court for instructions. *Basic Resolution 876,* 2008 WL 2168643, at *5. The court of appeals found that no retroactive application of sections 501B.16 and 501B.25 occurred in this case. *Id.*

Our legislature has specifically stated that "[n]o law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature." Minn. Stat. § 645.21 (2008). And we have held that section 645.21 requires the legislature to express its intention to make a law retroactive, regardless of whether that law affects procedural or substantive rights. *Estate of Murphy v. State,* 293 Minn. 298, 308, 198 N.W.2d 570, 576 (1972). The 1993 amendment substantially changed Minn. Stat. § 501B.25 because it allowed the procedures of chapter 501B to be applied to bonds "without a trust indenture." Act of May 19, 1993, ch. 271, § 8, 1993 Minn. Laws 1541, 1547–48. Nothing in the amendment evinces an intention to make the law retroactive. Therefore, we are left to decide whether the district court's grant of the Port Authority's petitions was, in fact, a retroactive application of the amended law.

■ A "retroactive law" is one that "looks backward or contemplates the past, affecting acts or facts that existed before the act came into effect." *Black's Law Dictionary* 1343 (8th ed.2004). Moreover, it

is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute. Furthermore, a retrospective law has been defined as one intended to affect transactions which occurred or rights which accrued before it became operative and which ascribes to them effects not inherent in their nature in view of the law in force at the time of their occurrence.

73 Am.Jur.2d *Statutes* § 244 (2001); *see also Cooper v. Watson,* 290 Minn. 362, 369, 187 N.W.2d 689, 693 (1971) (quoting 50 Am.Jur. *Statutes* § 476 (1944)).

Here, applying to these bonds the 1993 amendment to section 501B.25 alters the contractual rights of the bondholders under Basic Resolution 876. The Basic Resolution provides limited ways for the resolution to be amended, and it does not include the chapter 501B procedures. In particular, the Basic Resolution allows the Port Authority to make changes with bondholder consent, but without bondholder consent only if those changes are "not to the prejudice of any Holders of General Revenue Bonds." Appellants claim, and we agree, that the relief requested in the Port Authority's petitions, including the liquidation of all remaining 876 Bonds, may prejudice some of the holders of 876 Bonds. Thus, allowing the Port Authority to petition for instructions under section 501B.16 gives the Port Authority more procedural rights than it possesses under the Basic Resolution. Because we no longer have a distinction between retroactive laws that affect procedural and substantive rights, we hold that the district court's acceptance of the Port Authority's petitions was an impermissible retroactive application of the 1993 amendment to section 501B.25.[4]

4.  The Port Authority contends that, instead of petitioning under section 501B.16, it could

We therefore vacate the May 17, 2007, district court order in response to the Port Authority's 2006 petition. Because the order is vacated, we need not address the constitutional issues raised by appellants. We also have no need to address appellants' argument that the district court erred by denying appellant's petition for a receiver.

## II.

■ Appellants' next claim is that the 2002 and 2004 orders must be vacated for lack of subject-matter jurisdiction. The district court did not address this issue because it found that the Port Authority's petitions in 2002 and 2004 were properly before the court. The court of appeals decided that appellants' challenges were futile because "[t]he 2002 and 2004 orders were, and remain, as a practical matter, exhausted, dormant, and beyond effective involvement in this litigation." *Basic Resolution 876*, 2008 WL 2168643, at *4.

■ Appellants brought their motion to vacate pursuant to Minn. R. Civ. P. 60.02(d), which states that the court may relieve a party from a final judgment or order. Under Minn. R. Civ. P. 60.02, motions for relief from orders must be "made within a reasonable time." If the alleged error is because of mistake, newly discovered evidence, or fraud, then the motion must be made within a year of the order. Minn. R. Civ. P. 60.02(a)-(c). But if the order to be vacated was void ab initio, then the motion to vacate it can be made within a reasonable time that is determined by considering the attendant circumstances. Minn. R. Civ. P. 60.02(d); *Bode v. Minn. Dep't of Natural Res.*, 612 N.W.2d 862, 870 (Minn.2000). We have stated that "[a]

void judgment is one rendered in the absence of jurisdiction over the subject matter or the parties." *Matson v. Matson*, 310 N.W.2d 502, 506 (Minn.1981) (citing *Lange v. Johnson*, 295 Minn. 320, 323, 204 N.W.2d 205, 208 (1973)). Determining the applicable time limit for appellants' challenges is a jurisdictional question, which we review de novo. *Bode*, 612 N.W.2d at 866.

The statutes at issue in this case define whether or not the district court may exercise in rem jurisdiction over a trust or a bond. Minnesota Statutes § 501B.24 (2008) describes the district court's authority under the chapter 501 procedures as having jurisdiction over a trust "as a proceeding in rem." In 2002 the court found that it had jurisdiction over the Basic Resolution "under Minn.Stat. § 501B.24 as a proceeding in rem.... Pursuant to Minn. Stat. § 501B.25, for such purposes only, the bond covenants shall be deemed the 'trust,' Basic Resolution 876 shall be deemed the 'trust instrument,' and the Port Authority shall be deemed the 'trustee.'" And in 2004, the court concluded that it had the authority "to bind all past, existing and future bondholders to matters raised in this petition." But we have concluded that chapter 501B cannot be applied to these bonds retroactively. The district court's conclusions as to its jurisdiction under Minn.Stat. § 501B.24 were erroneous as a matter of law. Thus, the district court had no authority pursuant to chapter 501B, and its 2002 and 2004 orders are void because they were rendered without in rem jurisdiction over the 876 Bonds.

Under Minn. R. Civ. P. 60.02(d), the next step is to determine whether appellants' motion to vacate was made within a

have achieved the same results through a declaratory judgment under chapter 555. But chapter 555 only allows a court to construe a contract, not modify or deviate from

one, which was part of the Port Authority's requests. Minn.Stat. § 555.02 (2008). Therefore, the chapter 555 procedures are irrelevant to the issue in this case.

reasonable time when considering the attendant circumstances. In *Bode,* even though the judgment at issue was void, we still concluded it was proper to determine whether a motion to vacate was made within a reasonable time. 612 N.W.2d at 870. Here, although we recognize that the district court never had and still does not have in rem jurisdiction over the 876 Bonds, we believe that the question of whether appellant's motion to vacate was made within a reasonable time is better addressed by the district court because this record is not sufficient for us to properly determine all attendant circumstances. *See Newman v. Fjelstad,* 271 Minn. 514, 522, 137 N.W.2d 181, 186 (1965) (" 'Since what is a reasonable time must be determined in light of all attendant circumstances, intervening rights, loss of proof by or prejudice to the adverse party, the commanding equities of the case, the general desirability that judgments be final and other relevant factors bear upon the problem.' ") (quoting 7 Moore, *Federal Practice* ¶ 60.27 (2d ed.1955)).

We therefore vacate the May 17, 2007, district court order in response to the Port Authority's 2006 petition. We reverse and remand the matter to the district court to determine whether, considering all attendant circumstances, appellants' motion to vacate the court's 2002 and 2004 orders was brought within a reasonable time.

MAGNUSON, Chief Justice, took no part in the consideration or decision of this case.

DIETZEN, Justice (concurring).

Although I concur in the court's decision that the 2002 and 2004 orders regarding Basic Resolution 876 are void because the district court lacked in rem jurisdiction over the revenue bonds, I write separately to voice my concern about the unevenness of our cases on subject matter jurisdiction.

Appellants argue that the district court's lack of authority over the revenue bonds implicates the court's subject matter jurisdiction. Our cases have not always been clear as to the classification of matters that involve subject matter jurisdiction and, more specifically, whether in rem jurisdiction should be treated more like subject matter jurisdiction or personal jurisdiction. *Compare In re Florance,* 360 N.W.2d 626, 629 n. 1 (Minn.1985) (discussing in rem jurisdiction in the context of the court's subject matter jurisdiction), *with Hoff v. Kempton,* 317 N.W.2d 361, 365 n. 5 (Minn. 1982) (expressing our understanding that in rem jurisdiction is commonly grouped "under the rubric of 'personal jurisdiction' ").

We need not resolve the nature of the jurisdictional issue in this case, because "[a] void judgment is one rendered in the absence of jurisdiction over the subject matter *or* the parties." *Matson v. Matson,* 310 N.W.2d 502, 506 (Minn.1981) (emphasis added). Notwithstanding our efforts in recent years to distinguish procedural tools from jurisdictional limits, *see, e.g., In re Civil Commitment of Giem,* 742 N.W.2d 422, 427–29 (Minn.2007), there is a need for further clarification of our jurisprudence on subject matter jurisdiction.