Judy V. BODE, et al., petitioners,
Appellants,

v.

MINNESOTA DEPARTMENT OF
NATURAL RESOURCES, et
al., Respondents.

No. C1–98–2200.

Supreme Court of Minnesota.

June 1, 2000.
Rehearing Denied July 24, 2000.

Brian Bates, St.Paul, for appellant.

Mike Hatch, Attorney General, Craig L. Engwall, Assistant Attorney General, St. Paul, for respondent.

## OPINION

PAUL H. ANDERSON, Justice.

In 1998, following 18 years of legal and administrative proceedings, appellants Judy and Linda Bode asserted that a 1986 Nicollet County District Court judgment was void because a 1980 appeal from an administrative hearing was filed one day late. In that subsequent and separate district court action, the Bodes made a motion under Minn. R. Civ. P. 60.02(d), arguing that the district court's 1986 judgment was void because the 1980 appeal by respondent Minnesota Department of Natural Resources (DNR) had been untimely. The Bodes asked the court to vacate its prior judgments on the grounds that the court lacked subject matter jurisdiction to hear the DNR's 1980 appeal. The court granted the Bodes' motion to vacate, but the Minnesota Court of Appeals reversed. We affirm the court of appeals.

In 1976 and again in 1979, the Minnesota Legislature directed the Commissioner of the DNR to inventory the state's public waters and to designate those that were public waters and wetlands.[1] As a result of this legislation, the DNR inventoried the Bode farm in Nicollet County and classified part of the farm as wetlands. The DNR determined that the designated tract of land met the definition of "wetlands" contained in Minn.Stat. § 105.37, subd. 15 (Supp.1979) which, in relevant part, required that wetlands in unincorporated areas be at least ten acres in size.[2]

In August 1980, William Bode[3] timely appealed the DNR's classification to the Nicollet County Hearings Unit. The Hearings Unit was created by statute to resolve landowner disputes arising from the DNR's wetlands inventory. See Minn. Stat. § 105.391, subd. 1 (Supp.1979). By an order dated September 10, 1980, the Hearings Unit concluded that there were two separate "water basins" located on the Bode farm, with each basin being smaller than ten acres. Accordingly, the Hearings Unit found that the DNR had improperly classified part of the Bode farm as wetlands. The Hearings Unit order was mailed to the DNR on October 1, 1980.

The DNR appealed the Hearings Unit order to the district court pursuant to Minn.Stat. § 15.0424, subd. 2(1) (Supp. 1979),[4] which is a provision of the Administrative Procedures Act. The Bodes now contend that this appeal was filed one day late and the DNR does not contest this point. However, when the district court accepted jurisdiction in 1980, it appears that neither party was aware that the filing was late. In any case, at that time,

---

1. See Act of Mar. 25, 1976, ch. 83, § 8, 1976 Minn. Laws 212–14 codified at Minn.Stat. § 105.391 amended by Act of May 25, 1979, ch. 199, § 7, 1979 Minn. Laws 336–37 recodified at Minn.Stat. § 103G.201 by Act of Apr. 6, 1990, art. 7, § 13, art. 10, § 4, 1990 Minn. Laws 644, 752.

2. Minnesota Statutes § 105.37, subd. 15 was recodified as Minn.Stat. § 103.G.005, subd. 18. See Act of Apr. 6, 1990, ch. 391, art. 7, § 2, art. 10, § 4, 1990 Minn. Laws 640–41, 752. In 1996, the legislature renumbered subdivision 18 as subdivision 15a. See Act of Apr. 11, 1996, ch. 462 § 43, 1996 Minn. Laws 1554.

3. William Bode was the father and a predecessor in title to appellants Judy and Linda Bode. In 1986, Judy and Linda Bode received title to the Bode farm subject to a life estate in their parents, William and Rose Bode. William Bode died on September 1, 1993.

4. Minnesota Statutes § 15.0424 was renumbered as Minn.Stat. § 14.64. See Act of Mar. 18, 1982, ch. 424, § 130, 1982 Minn. Laws 368.

William Bode did not make any objection on the grounds that the court lacked subject matter jurisdiction. The following year, in 1981, William Bode installed a tile drainage system within the bed of the tract of land designated by the DNR as wetlands. Installation of the tile resulted in the complete drainage of the tract. The tract was then tilled, used to raise crops, and according to Judy Bode, yielded 170 bushels of corn per acre.

Meanwhile, the court considered the DNR's appeal and in 1986 reversed the Hearings Unit findings by an order for judgment that was dated December 17, 1986. Following the 1986 judgment, years of legal proceedings ensued between the Bodes and the DNR regarding the DNR's efforts to restore the wetlands located on the Bode farm. It is fair to say that at times the relationship between the Bodes and the DNR was acrimonious. For example, there was an episode on May 7, 1992 when the DNR, with the assistance of conservation officers and sheriff's deputies, went onto the Bode farm to destroy part of the Bodes' tile drainage system. A similar episode appears to have occurred on November 22, 1993.

In March 1996, the Bodes brought a subsequent independent action in district court alleging that (1) part of their farm had been improperly classified as wetlands, and (2) they were entitled to damages resulting from the DNR's destruction of part of their tile drainage system. In response to this action, the DNR raised the affirmative defense of collateral estoppel, asserting that the classification issue had already been decided. The DNR also asserted the defense of official immunity and subsequently moved for summary judgment on both grounds. The court granted the motion by an order dated September 18, 1997 and judgment was entered four days later.

In July 1998, in conjunction with the 1996 action, the Bodes brought a motion pursuant to Minnesota Rules of Civil Procedure 60.02(d) and 56 to vacate the 1986 judgment and for partial summary judgment in their favor on the first count of the 1996 action. In this motion, the Bodes, for the first time in the many years of legal proceedings, raised the issue of lack of subject matter jurisdiction. More particularly, the Bodes argued that the DNR's 1980 appeal to the district court had been untimely; thus, the court never had subject matter jurisdiction, which lack of jurisdiction rendered the 1986 judgment void. The court agreed with the Bodes' argument and (1) vacated the 1986 judgment, (2) vacated its grant of summary judgment to the DNR as to the first count in the 1996 action, and (3) granted partial summary judgment to the Bodes on the first count of the 1996 action. In reaching this result, the court interpreted Minnesota case law as clearly demonstrating that judgments are void when the court granting judgment lacked subject matter jurisdiction. The court also found that there is no time limitation for commencing proceedings to vacate such judgments.

The DNR appealed and the court of appeals reversed. The court of appeals began its analysis by stating that "[s]ubject-matter jurisdiction is 'a court's power to hear and determine cases of the general class or category to which the proceedings in question belong.'" *Bode v. Minnesota Dept. of Natural Resources*, 594 N.W.2d 257, 259 (Minn.App.1999) (quoting *Black's Law Dictionary* 1425 (6th ed.1990)). The court then concluded that some Minnesota case law has applied subject matter jurisdiction analysis to judgments that do not necessarily fall within the aforementioned definition of subject matter jurisdiction, but instead involve "procedural irregularities." *Id.* The court reasoned that cases with procedural irregularities may involve an "incurable jurisdictional defect," but do not necessarily implicate subject matter jurisdiction. *Id.* The court then stated that holding a judgment void for lack of subject matter jurisdiction based on an untimely appeal confuses an inappropriate exercise of power with the absence of

power. *See id.* at 260. Applying this reasoning, the court held that "the 1986 judgment was not void for subject matter jurisdiction as that term is applied in its strict sense * * *." *Id.* at 263. On appeal to this court, the Bodes challenge the court of appeals' conclusion and again argue that the 1986 district court judgment should be vacated.

## I.

■ We begin our analysis by noting that a party may either directly or collaterally challenge a judgment's validity for a lack of subject matter jurisdiction. A party can directly attack a judgment "in the same proceeding as the one in which the judgment was entered." *Black's Law Dictionary* 472 (7th ed.1999). Also, when appropriate, a party may make a collateral attack, which is an "attack on a judgment entered in a different proceeding." *Id.* at 255. Here, it is undisputed that the Bodes brought a Minn. R. Civ. P. 60.02(d) motion attacking the validity of the 1986 judgment in the context of their subsequent independent 1996 action. Because the Bodes challenged the 1986 judgment in a different proceeding, their attack was collateral. But Rule 60.02(d) is a procedural mechanism to directly, rather than collaterally, attack a void judgment. *See generally* Minn. R. Civ. P. 60.02. This characterization is supported by the language in the rule that provides that the rule "does not limit the power of a court to entertain an independent action to relieve a party from a judgment * * *." *Id.*

■ By filing a Rule 60.02(d) motion for a direct attack on subject matter jurisdiction in the context of the 1996 action, the Bodes were, in effect, collaterally challenging the district court's subject matter jurisdiction over the 1986 action. In this context, the Bodes' motion must fail because a Rule 60.02(d) motion is not the proper vehicle for such a collateral attack. We therefore conclude that the Bodes' motion was procedurally improper and that

the district court erred when it granted the motion.

■ Beyond being procedurally deficient, the Bodes' collateral attack on the 1986 judgment for lack of subject matter jurisdiction also fails on its merits. We review issues involving jurisdiction de novo. *See Minnesota Ctr. for Envtl. Advocacy v. Metropolitan Council,* 587 N.W.2d 838, 842 (Minn.1999). We have held that the "statutory limitation of time within which an appeal may be taken from an appealable order or * * * judgment is jurisdictional." *Arndt v. Minnesota Educ. Ass'n,* 270 Minn. 489, 490, 134 N.W.2d 136, 137 (1965). The traditional rule is that there is no time limit for challenging a final judgment that is void for lack of subject matter jurisdiction. *See* 12 James W. Moore et al., *Moore's Federal Practice* § 60.44 (3d ed.1997). The principle underlying this rule is that a judgment's validity is of utmost importance. Minnesota courts have adhered to this traditional rule. In *Lange v. Johnson* and its progeny, we held that judgments are void if a court lacks subject matter jurisdiction and that there is no time limit for bringing a motion to vacate such a judgment. 295 Minn. 320, 323–24, 204 N.W.2d 205, 208 (1973); *see also Peterson v. Eishen,* 512 N.W.2d 338, 341 (Minn.1994).

Under the traditional rule, a judgment rendered by a court that lacks subject matter jurisdiction is void and can be challenged at any time. *See* 12 James W. Moore et al., *Moore's Federal Practice* § 60.443 (3d ed.1997). While this rule places great emphasis on a judgment's validity, there is a countervailing consideration—the interest in finality—that can be undermined by application of this rule. Total reliance on a judgment's validity may produce problematic results when attacks on subject matter jurisdiction are initiated after final judgment is entered. The dilemma posed by the conflicting interests of finality and validity was discussed by the commentators to Section 12 of the Restate-

ment (Second) of Judgments when they stated:

> Questions of subject matter jurisdiction must be justiciable if the legal rules governing competency are to be given effect; some tribunal must determine them, either the court in which the action is commenced or some other court of referral. If the question is decided erroneously, and a judgment is allowed to stand in the face of the fact that the court lacked subject matter jurisdiction, then the principle of validity is compromised. On the other hand, if the judgment remains indefinitely subject to attack for a defect of jurisdiction, then the principle of finality is compromised.

Restatement (Second) of Judgments § 12, cmt (a) (1982). For example, it may be unjust to allow a party to contest subject matter jurisdiction after the opposing party has prevailed on the merits. *See generally id.* Additionally, vacating a judgment after years of litigation may waste both public and private resources. *See generally id.*

■ In response to problems with application of the traditional rule in the context of collateral attacks on subject matter jurisdiction, a modern rule has developed that moves away from the traditional rule and its exclusive emphasis on validity. This modern rule is reflected in Section 12 of the Restatement (Second) of Judgments, which limits when collateral attacks on subject matter jurisdiction will be permitted. Section 12 attempts to balance validity with finality in contested actions by precluding post-judgment challenges to a court's subject matter jurisdiction in subsequent litigation except under three circumstances. More specifically, Section 12

provides that when a court has rendered a judgment in a contested action, motions in subsequent litigation to vacate that judgment for lack of subject matter jurisdiction should not be permitted unless:

> (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or
>
> (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or
>
> (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

Restatement (Second) of Judgments § 12. In recent years, a number of jurisdictions have favorably cited Section 12.[5]

The Bodes' collateral attack on the 1986 judgment implicates the conflicting policy concerns that underlie the traditional and modern rules. The Bodes first contested subject matter jurisdiction 18 years after the DNR's initial appeal from the Hearings Unit order and 12 years after entry of the contested district court judgment. The district court, applying the traditional rule and the principles of our case law, vacated its 1986 judgment despite the fact that, in the interim, the parties took substantial action in reliance on the judgment. Prior to the 1986 judgment, William Bode installed a tile drainage system within the tract designated by the DNR as wetlands. Relying on the judgment, the DNR issued

---

**5.** *See, e.g., O'Leary v. Liberty Mut. Ins. Co.,* 923 F.2d 1062, 1066 n. 5 (3d Cir.1991); *Simmons v. Diamond Shamrock Corp.,* 844 F.2d 517, 520–21 n. 5 (8th Cir.1988); *McDougald v. Jenson,* 786 F.2d 1465, 1486 n. 12 (11th Cir.1986); *Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.,* 969 F.Supp. 907, 918–19 (D.N.J.1997); *Wall v. Stinson,* 983 P.2d 736, 741–42 (Alaska 1999); *Meinket*

*v. Levinson,* 193 Conn. 110, 474 A.2d 454, 455–56 (1984); *In re Marriage of Mitchell,* 181 Ill.2d 169, 229 Ill.Dec. 508, 692 N.E.2d 281, 284 (1998); *Ervey v. Northeastern Log Homes, Inc.,* 638 A.2d 709, 711 (Me.1994); *In re B.C.,* 169 Vt. 1, 726 A.2d 45, 50–51 (1999); *In re Marriage of Brown,* 98 Wash.2d 46, 653 P.2d 602, 603–04 (1982); *In re H.N.T.,* 125 Wis.2d 242, 371 N.W.2d 395, 398–99 (1985).

a restoration order in 1989 requiring the Bodes to remove that drainage system. When the Bodes did not comply, the DNR obtained a default judgment to enforce the order. When the Bodes still did not comply, the court held them in contempt and issued an order authorizing the DNR to restore the wetlands. In 1992 and 1993, the DNR forcibly went onto the Bode farm to destroy the tile drainage system.

Applying the traditional rule would invalidate these actions taken in reliance on the 1986 judgment's presumed validity. Such a result exemplifies the policy concerns that have led courts away from the traditional rule. We share many of these concerns; therefore, we conclude that it is appropriate that we now evaluate which approach—the traditional rule or the modern rule—strikes a better balance between the need to preserve a judgment's finality and its validity.

■■■■ As previously noted, the Bodes actually launched a collateral attack on the 1986 judgment when they moved to vacate that judgment under their 1996 action. Therefore, we will analyze the Bodes' collateral attack in light of the competing principles of finality and validity. While we acknowledge these principles cannot be perfectly accommodated, we recognize that total reliance on a judgment's validity produces problematic results when attacks on subject matter jurisdiction are initiated long after a final judgment is entered. Further, "if [a] judgment remains indefinitely subject to attack for a defect of jurisdiction, then the principle of finality is compromised." Restatement (Second) of Judgments § 12, cmt (a). Therefore, we conclude that Section 12 achieves a better balance between finality and validity in the context of a collateral attack on subject matter jurisdiction than does our traditional rule. Accordingly, we will proceed to examine the Bodes' collateral attack on subject matter jurisdiction to determine if it fits within one of the three exceptions found in Section 12.

Under the first exception, the Bodes can contest subject matter jurisdiction if the first action's subject matter was "so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority." Restatement (Second) of Judgments § 12. This exception is inapplicable here because it is undisputed that if the appeal had not been filed one day late, the district court would have had jurisdiction to consider the DNR's appeal from the Hearings Unit order. Therefore, we conclude that Section 12's first exception is inapplicable because the district court's consideration of the substantive issue in the first action was not a manifest abuse of authority.

We also conclude that the second and third exceptions do not apply. The district court did not "substantially infringe the authority of another tribunal or agency of government * * *." Restatement (Second) of Judgments § 12. Nor have the Bodes demonstrated that the court lacked the capability "to make an adequately informed determination of a question concerning its own jurisdiction." *Id.* The Bodes do not dispute that the district court was the proper forum for the DNR's appeal. In fact, under the APA, the court was the designated forum for resolving this category of disputes. Further, it appears that the DNR's 1980 appeal, other than being one day late, conformed exactly to the provisions of the APA. Therefore, we conclude that the district court's consideration of the substantive issue did not substantially infringe on another government tribunal or agency's authority nor was the court incapable of evaluating its own jurisdiction.

Because we conclude that the Bodes incorrectly brought their motion under Rule 60.02(d) and that the motion does not fall within any of the Section 12 exceptions, we hold that a collateral attack on the district court's subject matter jurisdiction must fail. Therefore, the district court erred when it granted the Bodes' motion.

## II.

■ Even though we have held that the district court improperly granted the Bodes' Rule 60.02(d) motion, this case presents an additional issue that warrants our consideration. The Bodes made a jurisdictional challenge that was in effect a collateral attack on subject matter jurisdiction, but the district court treated it as a direct attack on the 1986 judgment. Indeed, the parties have litigated this appeal on the grounds that the Bodes' motion was a direct attack on subject matter jurisdiction. Thus, we have been presented with the issue of a direct attack on subject matter jurisdiction made 18 years after the entry of final judgment. It would be an exercise in judicial inefficiency for us to remand this case to the district court in order to permit the Bodes to refile a Rule 60.02(d) motion in the context of the action in which the 1986 judgment was entered and then, if successful, to file a Rule 60.02(e) motion in the 1996 action. *See State v. Lothenbach*, 296 N.W.2d 854, 856 (Minn.1980) (holding that we will address issues raised by appellant despite technical errors under circumstances where the interest in judicial economy so demands); [6] *see also State v. Faber*, 343 N.W.2d 659, 660 (Minn.1984). Accordingly, we will address the propriety of a direct attack on the 1986 judgment.

Minnesota Rule of Civil Procedure 60.02 permits a party, on the basis of thirteen reasons within six specific grounds, to move to set aside a final judgment, including if "[t]he judgment is void." Minn. R. Civ. P. 60.02(d). The rule further provides that a motion to vacate a void judgment "shall be made within a reasonable time

\* \* \*." Minn. R. Civ. P. 60.02.[7] By including this limitation, the rule demonstrates an intent to limit the length of time within which a party may receive relief from a final judgment. Thus, Rule 60.02 reflects aspects of the modern rule.

Despite the "reasonable time" language of Rule 60.02, we have in the past adhered to the traditional rule for challenging final judgments for lack of subject matter jurisdiction by not applying Rule 60.02's reasonable time requirement to motions to vacate a judgment for lack of subject matter jurisdiction. We held in *Lange* and its progeny that the time limits imposed by Rule 60.02 do not apply to motions to vacate a judgment for lack of subject matter jurisdiction. *See, e.g., Lange*, 295 Minn. at 323–24, 204 N.W.2d at 208; *Peterson*, 512 N.W.2d at 341. However, it is important to note that in *Peterson* we did not foreclose the possibility that extraordinary circumstances could be presented that would justify a departure from this general rule. *See id.*

Some of the problems encountered by courts when attempting to reconcile the interests in validity and finality are illustrated by the court of appeals' effort to fashion some distinction between subject matter jurisdiction and procedural irregularities. Indeed, the Eighth Circuit Court of Appeals has made similar distinctions. For example, in *Kansas City Southern Ry. Co. v. Great Lakes Carbon Corp.*, the court stated:

Absence of subject matter jurisdiction *may*, in certain cases, render a judgment void. However, this occurs only

---

**6.** In *Lothenbach* we concluded that

while technically defendant's plea was a conditional guilty plea, which our rules do not permit, and that normally the proper procedure would be to remand for withdrawal of plea, in substance the procedure used by defendant to obtain appellate review of the Fourth Amendment issue is no different from the procedure of pleading not guilty and then stipulating to the state's evidence, a procedure which the trial court

indicated that it would be willing to follow. Under the circumstances and in the interests of judicial economy, we therefore address the Fourth Amendment issue raised by defendant.

*Lothenbach*, 296 N.W.2d at 856.

**7.** Rule 60.02 imposes the additional limitation that a motion based on some of the enumerated grounds not at issue here must be brought within a year.

where there is a plain usurpation of power, when a court wrongfully extends its jurisdiction beyond the scope of its authority. Stated another way, such plain usurpation of power occurs when there is a "total want of jurisdiction" as distinguished from "an error in the exercise of jurisdiction."

624 F.2d 822, 825 (8th Cir.1980) (citation omitted) (quoting *Lubben v. Selective Serv. Syst.*, 453 F.2d 645, 649 (1st Cir.1972)). Later, in *Kocher v. Dow Chemical Co.*, the court stated that "a judgment is not void for lack of subject matter jurisdiction unless 'no arguable basis' for jurisdiction existed." 132 F.3d 1225, 1230 (8th Cir.1997). We do not find these attempts to be a satisfactory solution to the problem of reconciling the principles of finality and validity. Rather, we conclude that applying the reasonable time limit of Rule 60.02 to a Rule 60.02(d) motion to vacate a judgment for lack of subject matter jurisdiction achieves a better balance between finality and validity than either our prior application of the traditional rule or the court of appeals' distinction between subject matter jurisdiction and procedural irregularities.

 Having concluded that direct attacks on a judgment based on lack of subject matter jurisdiction must be brought within a reasonable time, we next proceed to define the phrase "reasonable time" in the context of Rule 60.02. We interpreted this phrase in *Sommers v. Thomas*, 251 Minn. 461, 466, 88 N.W.2d 191, 195–96 (1958). There we stated that

> [w]hat constitutes a reasonable time varies from case to case and must be determined in each instance from the facts before the court because "(t)he very nature of the exercise of discretionary power in cases of this kind is such as to prevent any absolute rule being laid down."

*Id.* at 467, 88 N.W.2d at 195–96 (quoting *Pilney v. Funk*, 212 Minn. 398, 403, 3 N.W.2d 792, 795 (1942)). Expanding on this premise in *Newman v. Fjelstad*, we stated that what is a reasonable time must be determined by considering all attendant circumstances such as: "intervening rights, loss of proof by or prejudice to the adverse party, the commanding equities of the case, the general desirability that judgments be final and other relevant factors * * *." 271 Minn. 514, 522, 137 N.W.2d 181, 186 (1965) (quotation omitted). We reaffirm our definition of reasonable time as set forth in *Sommers* and *Newman* and will apply that definition to the facts of this case.

The Bodes brought their Rule 60.02(d) motion 18 years after the initial appeal was taken and 12 years after entry of the 1986 judgment. They have not proffered any satisfactory reasons why this motion was not brought earlier. The 1986 judgment was presumed valid and relied on for 12 years. For example, the DNR made significant restoration efforts based on the land being designated as protected wetlands, including issuing a restoration order and seeking enforcement of that order in district court. It would be inequitable and contrary to "the general desirability that judgments be final" to vacate this judgment after such reliance over such a lengthy period of time. *Newman*, 271 Minn. at 522, 137 N.W.2d at 186 (quotation omitted). Therefore, we conclude that consideration of all attendant circumstances mandates our holding that the Bodes' 1998 Rule 60.02(d) motion attacking the 1986 judgment or any subsequent motion directly attacking the 1986 judgment does not fall within the reasonable time limits of the Rule.

We conclude that the Bodes' motion does not fall within any of the Section 12 exceptions and was not brought within a reasonable time. Therefore, we hold that either a collateral or direct attack on the district court's subject matter jurisdiction fails. We affirm the result of the court of appeals.

Affirmed.

PAGE, Justice (dissenting).

I respectfully dissent.[1] First, I believe that the court's elevation of finality over validity is a mistake. I would retain the traditional rule. Further, the court says that the first exception to Section 12 of the Restatement (Second) of Judgments "is inapplicable here because it is undisputed that had the appeal been timely filed, the district court had jurisdiction to consider the DNR's appeal from the Hearings Unit order." While that statement is true as far as it goes, it ignores the fact that the appeal was not timely filed and the district court did not have jurisdiction to hear an untimely appeal. An untimely appeal is "so plainly beyond the [district] court's jurisdiction that its entertaining the action was a manifest abuse of authority."

1. If the majority's procedural analysis is correct and the Bodes did, in fact, bring an improper motion, there is no reason for this court to reach the substantive issues presented.