James L. WILSON, Relator,

v.

**COMMISSIONER OF REVENUE,**
Respondent.

No. C5–00–824.

Supreme Court of Minnesota.

Nov. 22, 2000.

Mark A. Pridgeon, Edina, for relator.

Michael Hatch, Atty. Gen., Barry R. Greller, Asst. Atty. Gen., St. Paul, for respondent.

## OPINION

LANCASTER, J.

Relator James Wilson appeals from a tax court order granting summary judgment in favor of the Commissioner of Revenue. The Commissioner found Wilson personally liable for an employment wage levy assessed against Hazardous Waste Controls of Bloomington, Inc. (HWC), a corporation Wilson founded in January 1994 and ran until it stopped doing business in December 1994. In granting summary judgment, the tax court upheld the Commissioner's personal assessment against Wilson. Wilson appeals, arguing that summary judgment was inappropriate because the tax court made two legal errors. Wilson first asserts that the court erred in holding that res judicata bars him from arguing that the assessment against him violates the Excessive Fines Clauses of Minn. Const. art. I, § 5, and U.S. Const. amend. VIII. Second, Wilson contends that the statutory scheme under which the Commissioner assessed Wilson's personal liability does not allow assessment of the total amount of the employee's tax liability, but limits the assessment to the amount of the state's actual pecuniary loss. Based on this second argument, Wilson contends that there are disputed issues of fact because the tax court did not calculate the Commissioner's actual pecuniary loss. We reverse the tax court's decision and hold that res judicata does not bar Wilson's excessive fines claim. Accordingly, we remand the case for further proceedings consistent with this opinion.

On May 12, 1994, the Commissioner of Revenue issued a third-party wage levy to Apple Valley Oldsmobile (Valley Olds), requiring it to pay to the State of Minnesota any wages earned by Jay R. Hanson III, an independent contractor who worked at Valley Olds and owed unpaid taxes. *See Hazardous Waste Controls of Bloomington, Inc. v. Commissioner of Revenue,* Docket No. 6589, 1997 WL 158263, at *1 (Minn.Tax Mar. 17, 1997) (*HWC I* ). After the levy was issued, relator James Wilson, a former Internal Revenue Service collection agent who was at that time working as a tax consultant, contacted the Commissioner and indicated that he represented Hanson. Wilson tried unsuccessfully to negotiate a payment plan for Hanson. Wilson then arranged for his company, HWC, to become the new janitorial service contractor for Valley Olds, and he hired Hanson to work for HWC performing the same services Hanson previously provided directly to Valley Olds as an independent contractor. Now, though, Hanson earned $6 an hour, rather than the $18 he had earned as a contractor for Valley Olds. In addition, the Commissioner could only extract 25% of Hanson's wages now that he was classified as an employee, as opposed to the 100% that the Commissioner could have demanded when Hanson was an independent contractor. In *HWC I,* the tax court found that Wilson contrived this new employment arrangement to help Hanson avoid the 100% third-party levy on his earnings. *See id.* at *4.

The Commissioner issued a wage levy against HWC on September 12, 1994. Wilson failed to respond to the levy. The Commissioner then issued a "Wage Levy—No Response Received" letter to Wilson, indicating that if he failed to comply, HWC would be liable for the full amount of Hanson's tax liability. The letter requested that HWC fill out and return a disclosure form; the form was never returned. Ultimately HWC, via Wilson, made only one payment to the Commis-

sioner. On November 2, 1994, the Commissioner issued HWC an "Order Assessing Liability for Failure to Honor Notice to Employer," which assessed HWC for $45,352.55, the total amount of Hanson's tax liability. HWC appealed. On November 4, 1994, the Commissioner issued an "Order Assessing Personal Liability" against Wilson, resulting in Wilson's personal liability for the failure of HWC to honor the wage levy. Wilson appealed this order, but the Commissioner held the personal assessment appeal in abeyance pending issuance of the tax court's decision in HWC's appeal.

On March 17, 1997, in *HWC I*, the tax court sustained the Commissioner's assessment against HWC. *See id.* at *2. HWC never appealed. On April 24, 1997, the Commissioner denied Wilson's appeal of the personal liability assessment. Wilson appealed this denial to the tax court.

The Commissioner brought a motion in limine requesting that the tax court exclude certain evidence because it related to issues already decided in *HWC I*. Among the evidence the Commissioner sought to exclude was evidence relating to: whether HWC was liable for Hanson's tax liability; whether the amount of the liability was different from Hanson's full tax liability; and whether HWC had a full and fair opportunity to raise and argue the constitutionality of the assessment—specifically whether the assessment was an excessive fine. In an order dated May 5, 1999, the tax court granted the Commissioner's motion in limine relying on the doctrines of collateral estoppel and res judicata to exclude various pieces of evidence.[1] *See Wilson v. Commissioner of Revenue*, Docket No. 6918, 1999 WL 285896, slip op. at 1, 4-8 (Minn.Tax May 5, 1999).

The tax court ultimately granted summary judgment in favor of the Commissioner, upholding the personal assessment against Wilson. *See Wilson v. Commissioner of Revenue*, Docket No. 6918, 2000 WL 306677, slip op. at 1 (Minn.Tax March 14, 2000). Wilson appeals to this court from the tax court's grant of summary judgment.

Wilson and the Commissioner agree on the legal issues presented in this appeal. First, did the tax court err in applying res judicata to bar Wilson's claim that the assessment against him is an excessive fine in violation of Minn. Const. art. I, § 5, and U.S. Const. amend. VIII? Second, did the tax court err in concluding that Minn. Stat. § 270.101 (1994) authorizes the Commissioner to assess against Wilson the full amount of Hanson's tax liability rather than the actual pecuniary loss suffered by the Commissioner?

When reviewing a grant of summary judgment, this court must decide whether any issues of material fact exist and whether the lower court made any errors in its application of the law. *See Care Inst., Inc.—Roseville v. County of Ramsey*, 612 N.W.2d 443, 445 (Minn.2000). We review tax court decisions only to determine whether the decision is supported by sufficient evidence and is in conformity with the law. *See id.* In this case, the facts are essentially uncontested and the only questions are questions of law. Specifically, we must consider whether res judicata was appropriately applied, a question of law which we review de novo. *See id.* at 446. Additionally, Wilson raises a

---

1. For purposes of this appeal, the most significant evidentiary exclusions are:

   D. Evidence that HWC's liability is other than $45,352.55, adjusted for any amounts paid on the account, as determined by the Court in *Hazardous Waste Controls of Bloomington, Inc. v. Commissioner of Revenue*, Docket No. 6589 (Minn. Tax Mar. 17, 1997) * * * or such lesser amount as the Commissioner determines;

   E. Evidence that HWC did not have a full and fair opportunity in the *HWC* Case to raise and argue the issue of whether the amount of the Levy constitutes an "excessive fine" or whether it violates any constitutional provisions * * *.

   *Wilson v. Commissioner of Revenue*, Docket No. 6918, 1999 WL 285896, slip op. at 2 (Minn.Tax May 5, 1999).

question of statutory construction, also a question of law subject to de novo review. *See Koehnen v. Dufuor*, 590 N.W.2d 107, 109 (Minn.1999).

■ The doctrine of res judicata bars a claim where litigation on a prior claim involved the same cause of action, where there was a judgment on the merits, and where the claim involved the same parties or their privies. *See Beutz v. A.O. Smith Harvestore Prods., Inc.*, 431 N.W.2d 528, 531 (Minn.1988); *Youngstown Mines Corp. v. Prout*, 266 Minn. 450, 466, 124 N.W.2d 328, 340 (1963). In addition, the party against whom res judicata is applied must have had a full and fair opportunity to litigate the matter in the prior proceeding. *See Dorso Trailer Sales, Inc. v. American Body and Trailer, Inc.*, 482 N.W.2d 771, 774 (Minn.1992). If those requirements are met, res judicata bars not only claims as to matters actually litigated, but also as to every matter that *might have been litigated* in the prior proceeding. *See Care Inst.*, 612 N.W.2d at 447; *Beutz*, 431 N.W.2d at 531; *Youngstown Mines Corp.*, 266 Minn. at 466, 124 N.W.2d at 340.

■ Res judicata exists "in order to relieve parties of the burden of relitigating issues already determined in a prior action, that a party may not be 'twice vexed for the same cause.'" *Beutz*, 431 N.W.2d at 531 (quoting *Shimp v. Sederstrom*, 305 Minn. 267, 270, 233 N.W.2d 292, 294 (1975)). The doctrine of res judicata reflects courts' disfavor with multiple lawsuits for the same cause of action and wasteful litigation. *See, e.g., Charboneau v. American Family Ins. Co.*, 481 N.W.2d 19, 21 (Minn.1992); *Mattsen v. Packman*, 358 N.W.2d 48, 50 (Minn.1984). Despite the strong policies supporting res judica-

ta, this court will not apply the doctrine rigidly but will reject the rule when its application contravenes an overriding public policy. *See AFSCME Council 96 v. Arrowhead Reg'l Corrections Bd.*, 356 N.W.2d 295, 299 (Minn.1984); *see also Brown v. Felsen*, 442 U.S. 127, 132, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) ("Because res judicata may govern grounds and defenses not previously litigated, however, it blockades unexplored paths that may lead to truth. * * * It therefore is to be invoked only after careful inquiry.").

■ The tax court found that the elements of res judicata were satisfied and held that Wilson could not raise his excessive fines claim. *See Wilson v. Commissioner of Revenue*, Docket No. 6918, 1999 WL 285896, slip op. at 8 (Minn.Tax May 5, 1999). Specifically, the court found that *HWC I* resulted in a judgment on the merits, a finding not disputed by Wilson. Additionally, the court found privity between Wilson and HWC, also not disputed by Wilson. Finally, the tax court found that the excessive fines claim could have been litigated in the first case, but HWC failed to do so.[2] Wilson disputes this finding.[3] He argues that the tax court did not have jurisdiction to hear constitutional arguments in *HWC I* and therefore his claim could not have been litigated.

■ This court recognizes "the general rule that a judgment rendered by a court which lacks jurisdiction to hear a case does not have the effect of res judicata." *Hauser v. Mealey*, 263 N.W.2d 803, 808 (Minn.1978). When the jurisdictional limits would not have allowed a party to raise a matter at a prior proceeding, then that matter is not one that "might have been litigated" in the original suit. *See id.*

---

2. *HWC I* makes clear that HWC did in fact raise the excessive fines claim: "Appellant also argues that the assessment constitutes an excessive fine and violates several constitutional provisions. We find no merit to Appellant's argument. Moreover, we find that Appellant's constitutional attack is not properly before us." *HWC I*, 1997 WL 158263, at *5.

3. Wilson also raises other arguments against the application of res judicata. However, because we conclude that res judicata was inappropriately applied since the tax court had no jurisdiction in *HWC I* to hear HWC's constitutional claims, we do not address Wilson's other arguments.

The question here is a variation on the theme, though. There were jurisdictional limits, but the limits could arguably have been circumvented.

■■■ The legislature created the tax court as an administrative agency of the executive branch. *See* Minn.Stat. § 271.01, subd. 1 (1998); *see also In re McCannel*, 301 N.W.2d 910, 919 (Minn. 1980) (recognizing the tax court as "essentially an administrative agency, deriving its power from a grant by the legislature"). The tax court has limited jurisdiction and no original jurisdiction to hear constitutional matters. *See Erie Mining Co. v. Commissioner of Revenue*, 343 N.W.2d 261, 264 (Minn.1984); *see also* Minn.Stat. § 271.01, subd. 5 (1998). However, in *In re McCannel*, this court held that a tax court has subject matter jurisdiction to hear constitutional claims if the case comes to it from the district court. *In re McCannel*, 301 N.W.2d at 919–20; *see also Erie Mining Co.*, 343 N.W.2d at 264. In essence, the district court transfers its legal and equitable powers to the tax court, thereby giving the tax court jurisdiction to hear constitutional issues.

■■■ In *Erie Mining Co.*, this court approved of a process whereby a tax court could gain jurisdiction over constitutional matters even if a case originated in tax court. *See* 343 N.W.2d at 264. If the tax court stays proceedings and refers the case to the district court for determination of the constitutional issue, and if after declining to make a constitutional determination the district court refers the case back to the tax court, the tax court may then exercise jurisdiction over the constitutional issue. *See id.* ("If any party raises a constitutional issue, the tax court should stay the proceedings and refer the constitutional question to the district court. The district court may either decide the constitutional issue or refer the matter back to the tax court which will then have subject matter jurisdiction" over the constitutional matters); *see also, e.g., Murray v. Timmons*, Docket No. C1–97–5261–R, 1999 WL 305224, at *1 (Minn.Tax May 11, 1999). Parties need not rely on the tax court to initiate this process, but may file a motion to trigger the "Erie Shuffle," as the process has become known. *See, e.g., Murray*, 1999 WL 305224, at *1 ("Plaintiffs brought a motion before this Court for transfer of the above referenced case back to District Court. * * * The purpose of this transfer motion * * * is to add constitutional claims to Plaintiffs' amended complaint."); *L.G.S.R.G. Partnership v. O'Connor*, Docket No. 97–567, 1998 WL 765701, at *1 (Minn.Tax Oct. 30, 1998) ("Plaintiffs now move to stay further proceedings in Tax Court and transfer this action back to district court because the due process claim was not first raised in district court * * *.").

In Wilson's case, the tax court found that Wilson could have assured that his constitutional argument was heard but failed to do so because his excessive fines claim was raised in *HWC I*, but HWC never requested that the court initiate the "Erie Shuffle." Accordingly, the tax court held that res judicata barred Wilson's argument because it might have been litigated in *HWC I*.

■■■ We decline to adopt the tax court's holding. "An administrative agency's jurisdiction * * * is limited and is dependent entirely upon the statute under which it operates." *McKee v. County of Ramsey*, 310 Minn. 192, 195, 245 N.W.2d 460, 462 (1976). The tax court has limited jurisdiction and may not hear constitutional claims unless a case originates in district court and is transferred to the tax court, or unless the tax court follows the procedure described above. As with any claim, res judicata does not operate to bar claims over which an administrative agency did not have jurisdiction. *Cf. McKee*, 310 Minn. at 195, 245 N.W.2d at 462 ("[R]es judicata will not operate as to those claims which were not raised and over which the administrative agency did not have jurisdiction."). Although the tax court may

ultimately gain the jurisdictional power to decide constitutional issues, it nonetheless is an administrative agency that is part of the executive and not the judicial branch and was created for a limited purpose and with limited jurisdiction. Until the tax court or the parties successfully take the initiative to trigger the procedure colloquially known as the "Erie Shuffle" and thereby extend the court's jurisdiction to hear constitutional claims, we hold that such matters are not of the type that "might have been litigated." In this case, we decline to except pre-"Erie Shuffle" tax court decisions from the general rule that res judicata does not govern claims that an administrative agency had no jurisdiction to address in the first instance. Therefore, we reverse the tax court's decision to apply res judicata to bar Wilson's excessive fines claim.

In view of our disposition, we decline to address the other issues raised by Wilson.

Reversed and remanded.