*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1062**

City of Orono,
Respondent,

vs.

Jay T. Nygard, et al.,
Appellants.

**Filed June 1, 2015
Affirmed
Hooten, Judge**

Hennepin County District Court
File Nos. 27-CV-11-5626, 27-CV-11-7765

Soren M. Mattick, Shana N. Conklin, Campbell Knutson, P.A., Eagan, Minnesota (for respondent)

Erick G. Kaardal, Mohrman, Kaardal & Erickson, P.A., Minneapolis, Minnesota (for appellants)

Considered and decided by Hooten, Presiding Judge; Schellhas, Judge; and Stauber, Judge.

## UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellants Jay and Kendall Nygard constructed a wind turbine in their backyard in violation of the City of Orono's zoning code. The district court found them in constructive civil contempt of court for repeatedly refusing to comply with its order to

remove the turbine after their legal challenges to Orono's zoning code failed. The Nygards now appeal the district court's denial of their motion to stay the contempt proceedings. We affirm.

## FACTS

Appellants Jay and Kendall Nygard live in a residential zoning district in the city of Orono. They applied for a permit to construct a wind turbine in their backyard. Orono denied their application, but the Nygards nonetheless constructed the turbine. The Nygards subsequently challenged Orono's denial of their permit application in district court, but the district court affirmed Orono's decision.

The Nygards appealed, and we reversed and remanded. *City of Orono v. Nygard*, No. A12-0711, 2012 WL 5188078, at *5 (Minn. App. Oct. 22, 2012). Orono had argued that its decision to deny the permit could be supported by the fact that the Orono zoning code did not specifically mention that wind turbines were a lawful accessory use. *Id.* at *3. We determined that the Orono ordinance describing lawful accessory uses was not exhaustive, and therefore the city could not support its decision to deny the Nygards' permit based solely on this interpretation of a single provision of the Orono zoning code. *Id.* at *3–4. But, because we did not state that the wind turbine was *permitted*, only that Orono's argument that wind turbines were prohibited under this specific provision of the code was not persuasive, we remanded the case "to the city for further consideration of the Nygards' permit application." *Id.* at *4. In conjunction with the remand, we did not render an opinion as to whether or not the Nygards' construction of the turbine should be

2

approved, nor did we render an opinion as to whether Orono's zoning code permitted turbines. *Id.*

Upon remand, Orono sent a letter to the Nygards stating that it had "been directed by the Minnesota Court of Appeals to review and further consider your permit application." In the letter, Orono asked the Nygards to provide answers to a series of questions about the turbine in order to determine whether the turbine complied with the zoning code. Orono asked for the Nygards' answers by November 16.

On November 2, the Nygards' counsel sent a letter to Orono stating that Orono's request for additional information served "no purpose other than to notify my clients that the City of Orono does not intend to cooperate with my clients or the Minnesota Appellate Court Ruling." According to the letter, the "correct interpretation and implementation" of this court's October 2012 opinion was that "no building permit is or was required." The letter further advised that the Nygards would sue Orono in district court if Orono took any further action on the Nygards' permit application.

Two weeks after Orono's November 16 deadline for the Nygards' answers passed, Orono denied the Nygards' permit application. Orono informed the Nygards that it denied their permit because it determined that their wind turbine did not comply with its zoning code. Orono found that the turbine was not an acceptable accessory use or structure because wind turbines are not "customarily incidental to the principal use or structure" as the zoning ordinance requires. Orono also contended that the turbine violated four other provisions of the city's zoning code because (1) it was not located at least 10 feet from a side lot line, (2) it was not at least 10 feet from the principal structure,

(3) it exceeded the 25% hardcover allowance, and (4) the turbine was located beyond the existing "average lakeshore setback line."

The Nygards did not administratively appeal this decision to the Orono zoning board of appeals. Instead, they bypassed the board and filed an informational statement in the ongoing district court action. The Nygards stated that they were challenging Orono's authority to prevent them from installing a turbine. Orono argued that it was justified in denying the permit because the wind turbine did not comply with its zoning code, and Orono moved for summary judgment.

In May 2013, the district court granted summary judgment for Orono. The district court determined that Orono's stated rationales for denying the permit were consistent with this court's previous decision to remand the case to Orono for "further consideration" of the permit. The district court granted Orono summary judgment on each one of its stated rationales for denying the permit. The district court also noted that following the remand from this court, the Nygards told Orono that they did not need a permit, even though this court told Orono to further consider the permit. The district court entered judgment and ordered the Nygards to remove the turbine, the pole supporting the turbine, and the concrete pad supporting the pole within 30 days.

The Nygards attempted to appeal the district court's judgment, but we dismissed their appeal as it was untimely. *See City of Orono v. Nygard*, No. A13-1459 (Minn. App. Nov. 5, 2013) (order). After the Nygards refused to remove the turbine, Orono alerted the district court to the Nygards' refusal to comply with the district court's now-final

order. The district court, noting that their appeal had failed, ordered the Nygards to show cause for their failure to timely comply with its order.

The record does not indicate that the Nygards responded to the district court's order to show cause. Instead, the Nygards contacted Orono directly, and in a letter received by Orono on February 10, 2014, the Nygards informed Orono that they did not need a permit, and they threatened to litigate the dispute in district court if Orono did not "[c]ease and desist" its "arbitrary harassment of the Nygard property." In a second letter received by Orono on February 11, 2014, the Nygards indicated that they would not respond to Orono's October 31, 2012 request for information about their turbine, and the Nygards denied even having a wind "tower" in violation of the zoning code on their property.

After hearing nothing from the Nygards, the district court found the Nygards in constructive civil contempt of court for refusing to remove the turbine. The district court then ordered the Nygards to remove the turbine and support pole within 20 days, while providing 60 days to remove the concrete pad. The district court also ordered the Nygards to contact the city by March 21, 2014 to allow Orono to inspect their property to confirm that the turbine and its support parts had been removed. As part of its civil contempt order, the district court indicated that if the Nygards did not comply with its order to remove the turbines, it would fine them and confine them in jail.

The Nygards did not comply with the district court's order. Instead, two months after the district court's deadline for removing the turbine passed, they requested that the district court stay the contempt proceedings. The Nygards asserted that the district court

5

should stay the contempt proceedings because they filed a declaratory judgment action in district court challenging Orono's zoning ordinance. Orono opposed the stay, arguing that "[t]his case should be closed" because the district court's May 2013 order granting Orono summary judgment established that the wind turbine did not comply with Orono's zoning code, and the Nygards' declaratory judgment action had nothing to do with the current dispute: the Nygards' failure to comply with the district court's order requiring the Nygards to take down the turbine. In their response, the Nygards argued for the first time that the district court lacked subject matter jurisdiction over the contempt proceedings.

The district court determined that it had subject matter jurisdiction to hear the contempt proceedings, and it denied the Nygards' request for a stay of that proceeding. The district court again ordered the Nygards to remove the turbine, but that order was stayed pending this appeal, which we are now asked to decide.

**D E C I S I O N**

**I.**

The Nygards argue that the district court lacked subject matter jurisdiction to conduct the contempt proceedings. Their argument is cumulative: they believe that the district court lacked subject matter jurisdiction to find them in contempt because the contempt proceedings arose from their failure to comply with the district court's order in their permit dispute, and the district court lacked subject matter jurisdiction over that permit dispute. The Nygards' argument is entirely meritless.

6

Subject matter jurisdiction refers to a court's authority to adjudicate a particular class of actions and the questions presented in those actions. *Anderson v. Cnty. of Lyon*, 784 N.W.2d 77, 80 (Minn. App. 2010), *review denied* (Minn. Aug. 24, 2010). A party may challenge the validity of a judgment on the grounds that the court issuing the judgment lacked subject matter jurisdiction. *Bode v. Minn. Dep't of Natural Res.*, 612 N.W.2d 862, 866 (Minn. 2000). These challenges may be either "direct" or "collateral." *Id.* A challenge is direct when a party challenges the subject matter jurisdiction of the court in the same proceeding in which the judgment is entered. *Id.* A challenge is collateral when, in a proceeding other than the one in which the judgment is entered, the party attacks the judgment by asserting that the court which entered the judgment lacked the subject matter jurisdiction to do so. *Id.*

Under the traditional rule, a party could, at any time, collaterally challenge the validity of a judgment on the theory that the court entering that judgment lacked subject matter jurisdiction. *Id.* at 866–67. Minnesota courts no longer follow the traditional rule. *Id.* at 868. Instead, a party collaterally attacking the subject matter jurisdiction of a final judgment entered in a separate proceeding must do more than prove that the court lacked subject matter jurisdiction; it must also demonstrate either that:

> (1) The subject matter of the action was so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority; or

> (2) Allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government; or

> (3) The judgment was rendered by a court lacking capability to make an adequately informed determination of a question concerning its own jurisdiction and as a matter of procedural fairness the party seeking to avoid the judgment should have opportunity belatedly to attack the court's subject matter jurisdiction.

*Id.* at 867 (quotation omitted).

The Nygards contend that they properly "initiated a special proceeding" to collaterally challenge the district court's subject matter jurisdiction over the city's second denial of their permit. To succeed, they must demonstrate both that the district court lacked subject matter jurisdiction and that at least one of the three factors explained in *Bode* is present in this case. *See id.*

The Nygards never presented the district court with any evidence or argument to support the existence of any of the three *Bode* factors. Instead, they simply clung to the traditional rule that a party could challenge the validity of a judgment for lack of subject matter jurisdiction "at any time" without making an additional showing under *Bode*. Because the Nygards did not present the district court with at least one of the three necessary *Bode* factors, their argument before the district court was, as a matter of law, insufficient to allow the district court to vacate the judgment based on a purported lack of subject matter jurisdiction. And while the Nygards' argument to this court did briefly mention *Bode*, we will not consider their *Bode* argument for the first time on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988) (declining to review argument raised for first time on appeal).

8

Even if we excused the Nygards' failure to raise the proper argument before the district court, we would still reject their *Bode* argument on appeal. On appeal, the Nygards simply asserted that they met the first *Bode* factor because they brought their challenge to the district court's subject matter jurisdiction sooner than the unsuccessful plaintiffs in *Bode*. The Nygards do not explain how the length of delay in bringing a challenge to subject matter jurisdiction is relevant to the first *Bode* factor, and we do not find any support in *Bode* for the assertion that it is relevant. *See Bode*, 612 N.W.2d at 867. Without any evidence or argument as to how the district court manifestly abused its authority to adjudicate the permit dispute, the Nygards failed to articulate their argument in a way that would allow us to review it. *See Schoepke v. Alexander Smith & Sons Carpet Co.*, 290 Minn. 518, 519–20, 187 N.W.2d 133, 135 (1971) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection.").

Finally, even if we excused the Nygards' failure to raise the proper arguments before the district court, and we were persuaded instead somehow by their unsupported assertion under the first *Bode* factor, we would still reject their argument on appeal. The Nygards failed to meet their other burden under *Bode* to show that the district court did in fact lack subject matter jurisdiction over the permit dispute. The Nygards' argument purporting to demonstrate that the district court lacked subject matter jurisdiction over those proceedings is entirely unpersuasive for at least five reasons.

First, the Nygards rely on an Orono ordinance to assert that the district court lacked subject matter jurisdiction to review Orono's denial of their permit. Their argument looks to the wrong authority to determine the extent of the district court's subject matter jurisdiction. The Orono ordinance states that "[t]he applicant . . . may appeal by filing a written notice stating the action appealed from and stating the specific grounds upon which the appeal is made." Orono, Minn., Code of Ordinances § 78-99 (2003). This ordinance governs the procedure for an administrative appeal within the city's administrative structure. It does not address, much less determine, the subject matter jurisdiction of the district court.

The relevant authority to determine whether the district court had subject matter jurisdiction over the Nygards' challenge of Orono's denial of their permit application is chapter 462 of the Minnesota statutes, which states:

> Any person aggrieved by an ordinance, rule, regulation, decision or order of a governing body or board of adjustments and appeals acting pursuant to sections 462.351 to 462.364 may have such ordinance, rule, regulation, decision or order, reviewed by an appropriate remedy in the district court, subject to the provisions of this section.

Minn. Stat. § 462.361, subd. 1 (2014). This statute unambiguously provides that the district court had subject matter jurisdiction. Orono acted pursuant to its zoning authority under section 462.357 to deny the Nygards' permit application. *See* Minn. Stat. § 462.357, subds. 1, 6 (2014). Orono's decision to deny the Nygards' permit means that the Nygards were "aggrieved by an ordinance, rule, regulation, decision or order of a governing body or board of adjustments and appeals acting pursuant to sections 462.351

10

to 462.364." Minn. Stat. § 462.361, subd. 1. Therefore, they were entitled to have the denial "reviewed by an appropriate remedy in the district court." *Id.* When the Nygards followed through on their threat to "litigate the issue in [district] court," they properly sought judicial review of Orono's actions in district court, thereby invoking the district court's subject matter jurisdiction over the dispute. *See id.* Just because the Nygards failed to persuade the district court on the merits of their argument does not mean that the district court lacked subject matter jurisdiction to adjudicate the dispute that the Nygards brought to that court.

The Nygards' second unpersuasive argument is that the district court lacked subject matter jurisdiction because the Nygards did not exhaust their administrative remedies by filing an administrative appeal. This argument fails because the Nygards read the relevant statute backward. Subdivision 2 of section 462.361 states that "[i]n actions brought under this section, *a municipality may* raise as a defense the fact that the complaining party has not attempted to remedy the grievance by use of procedures available for that purpose under ordinance or charter." *Id.*, subd. 2 (2014) (emphasis added). The statute provides that only the *municipality* may use the exhaustion-of-administrative-remedies defense; the applicant may not raise the defense. *See id.* And the municipality is not required to raise the defense; the municipality *may* do so. *See id.* Since Orono did not raise this defense, the Nygards' unpersuasive argument is not even relevant on this record. And we note that this defense was not provided to applicants, as the Nygards mistakenly assert, for good reason. The Nygards' faulty interpretation would wreak havoc on the straightforward process of judicial review that the statute

11

clearly provides. The Nygards' mistaken reading would turn the municipality's decision not to raise *its own affirmative defense* into a weapon that *applicants* could use to strategically, but improperly, challenge the district court's decision after-the-fact when the applicants themselves voluntarily failed to administratively appeal, as was the case here. This is simply not how the affirmative defense was intended to work; the district court has subject matter jurisdiction over disputes appealed under section 462.361 *even if the applicant does not exhaust its administrative remedies* when the municipality does not raise the exhaustion-of-remedies defense when further administrative review would be futile. *See Medical Servs., Inc. v. City of Savage*, 487 N.W.2d 263, 266 (Minn. App. 1992). There is no merit to the Nygards' second argument.

The third unpersuasive argument that the Nygards advanced on appeal is that they actually did administratively appeal, but Orono either ignored or precluded their administrative appeal before the Nygards brought the dispute back to district court. The record is wholly devoid of any support for the Nygards' claim that they attempted an administrative appeal. The Nygards claim that two letters that Orono received in February 2014 show that they attempted to administratively appeal. But in both of these letters, the Nygards explicitly told the city that they believed that they *did not need a permit* to construct the turbine. The first letter ominously warned Orono that if the city took any further action, the Nygards would *litigate the dispute in district court*. In the second letter, the Nygards denied that they had a "tower" in their backyard in violation of the zoning code, and for "proof" they provided Orono with a definition of the term "tower" and included a picture of the Eiffel Tower, apparently to indicate that they were

12

in compliance with Orono's zoning code because they had not constructed a 1,000-foot-tall iron-latticed structure in their backyard.

Looking backward now, the letters accurately captured how this dispute played out: the Nygards felt that they did not need a permit, and, if Orono thought otherwise, the Nygards would take the dispute to district court. This is exactly what *had already* happened. Now, more than a year later, they attempt to recast these documents as administrative appeals, and characterize Orono's legal arguments to the Nygards' challenge in district court as thwarting that appeal. There is no support in the record for these claims.

The fourth problem with their argument on appeal is that even if the Nygards somehow intended these letters to be an appeal, the Nygards failed to perfect their "appeal." The Orono code requires that any appeal to the zoning board must state the specific action the applicant is appealing from, and the grounds on which the appeal is based. *See* Orono, Minn., Code of Ordinances § 78–99 (2003) (providing for conditions necessary to perfect zoning appeals). In the letters, the Nygards did not identify the action that they were challenging. The letters explicitly stated that they did not need a permit. And neither letter even used the word "appeal" or any synonym of that word. Even if the Nygards intended these letters to be an appeal, their "appeal" was deficient under the zoning code, and we cannot fault Orono for not treating these threatening letters as appeals. It is hardly surprising that Orono informed the Nygards that it did "not know the intent" of these letters.

The final problem with the Nygards' argument is that even if Orono could have construed these letters as an appeal, Orono would have had no ability to adjudicate the Nygards' administrative "appeal." What the Nygards portray as an appeal occurred in February 2014. The Nygards' purported "appeal" to the zoning appeals board came four months *after* the district court's judgment affirming Orono's denial of their second permit became a *final judgment* entered on the merits.[1] Therefore, even if the Nygards tried to administratively appeal the decision in February 2014, they would have been barred from reopening the district court's judgment affirming Orono's denial of their second permit application because Orono and the Nygards *already litigated* the permit denial in district court which resulted in a *final judgment* on the merits. *See Wilson v. Comm'r of Revenue*, 619 N.W.2d 194, 198 (Minn. 2000) (precluding subsequent litigation of previous claim decided on the merits by the same parties). Courts do not allow parties to reopen closed cases for the practical reason of relieving prevailing parties "of the burden of relitigating issues already determined." *Id.* (quotation omitted). This principal reflects our supreme court's "disfavor" of multiple challenges involving the "same cause of action" because it leads to "wasteful litigation." *Id.* These concerns are well-founded here.

The Nygards needed to advance a very specific argument under *Bode* to collaterally challenge the district court's subject matter jurisdiction over the contempt

---

[1] The district court granted summary judgment in May 2013 and entered judgment in July 2013. That judgment became final in November 2013 following this court's dismissal of their appeal as untimely. *City of Orono v. Nygard*, No. A13-1459 (Minn. App. Nov. 5, 2013) (order).

proceedings. They failed to raise this claim before the district court, and they did not provide any argument on appeal as to how they satisfied *Bode.* Had they properly preserved these arguments for appeal, we still would have rejected their arguments because those arguments have no basis in the record and rely entirely on an erroneous view of the relevant caselaw and statutes. We affirm the district court's concise and well-reasoned determination that it has subject matter jurisdiction over the contempt proceedings.

## II.

The Nygards also challenge the district court's decision to deny them a stay in the contempt proceedings. In their principal brief, they merely requested that we grant a stay without offering a single argument as to why we should grant that relief. We do not consider requests for relief when parties fail to provide any legal authority or argument supporting their position. *See Schoepke*, 290 Minn. at 519–20, 187 N.W.2d at 135. In their reply brief, the Nygards attempted to provide a reason as to why the district court abused its discretion by denying their motion for a stay. We do not allow parties to revive a waived argument in their reply brief when the respondent does not address the waived argument, as was the case here. *See Wood v. Diamonds Sports Bar & Grill, Inc*., 654 N.W.2d 704, 707 (Minn. App. 2002), *review denied* (Minn. Feb. 26, 2003). Accordingly, the Nygards waived their right to argue for a stay from this court.

And, in any event, the Nygards failed to articulate any persuasive reason for a stay. Their theory before the district court, and in their reply brief, was that they should receive a stay because they filed a declaratory judgment action challenging an Orono

15

ordinance as preempted by state law. That action has absolutely no relation to the contempt proceeding. The Nygards' argument purporting to draw a link between that case and this one is premised on the false belief that there is still an open question about whether their turbine complied with the Orono zoning requirements in 2010, or whether the district court erred in 2013 in ruling for Orono. *There is no unanswered question.* The district court settled this dispute *two years ago*, and its decision became final when the Nygards' appeal of that decision failed. *See Wilson*, 619 N.W.2d at 198 (precluding parties from reopening litigation after court enters final judgment on the merits).

These contempt proceedings have nothing to do with the 2010 version of the Orono zoning code or how the district court analyzed this dispute in 2013. The contempt proceedings are about one issue only: the Nygards' flagrant and repeated refusal to recognize the legitimacy and finality of the district court's adjudication resolving their dispute once their appeal failed. No subsequent developments in the Orono zoning code could retroactively change the 2010 zoning code or affect how the district court analyzed the zoning code in 2013. Any change to the zoning code since the Nygards built their turbine is not relevant to the contempt proceedings. As to this turbine, the matter is settled: the Nygards' decision to construct the turbine without receiving the necessary permit from Orono means that the wind turbine must be removed from their property.

We note that the district court indicated that it would fine the Nygards and confine them in jail if they refused to comply with its order. We think that these sanctions are well within the district court's discretion to "compel future compliance" with its order. *Mower Cnty. Human Servs. ex. rel. Swancutt v. Swancutt*, 551 N.W.2d 219, 222 (Minn.

16

1996) (quotation omitted). If the Nygards still continue to refuse to remove the turbine, we note that the district court has "inherently broad discretion to hold an individual in contempt" when the individual acts "out of disrespect for the judicial process." *See Erickson v. Erickson*, 385 N.W.2d 301, 304 (Minn. 1986) (quotation omitted). The district court should not feel constrained in its efforts to ensure that the Nygards comply with its now-final judgment ordering them to remove the turbine, nor should the district court consider any subsequent changes or challenges to the Orono zoning code as even remotely relevant to the contempt proceedings. The only issue relevant to the contempt proceedings is the Nygards' intentional and inexcusable refusal to comply with the district court's order requiring them to remove the turbine, pole, and concrete support pad from their property.

**Affirmed.**